LUTHER BRYANT *versus* JOHN B. FAIRFIELD.

If an execution is extended upon land of the debtor, and it is set off to the creditor in satisfaction of the judgment, and such judgment is afterwards reversed upon a writ of error, the debtor is entitled to the land again : —

And he may recover it of one who purchased it of the creditor before the reversal of the judgment, without notice of any defect therein : —

Or, if he has not been evicted, such grantee of the creditor cannot maintain an action to recover it of him.

ON AGREED STATEMENT OF FACTS.

This was a WRIT OF ENTRY. From the case it appears that, at the January term of the Supreme Judicial Court for York county, 1855, one Josiah F. Leach recovered judgment against one Asa Leach, his father, for the sum of

$624,24, debt, and $8,23, costs, on which execution was issued and satisfied by a levy and extent upon land described in the plaintiff's writ, on the twentieth day of February, 1855, which execution was duly returned and said levy duly recorded. On the eighteenth day of April, 1855, said Josiah F. Leach executed a deed of warranty of the demanded premises to the demandant, which was duly recorded. Said Asa Leach died intestate in October, 1855, and administration upon his estate was duly granted to Nathaniel Leach of Kennebunkport, in said county, in May, 1856. On the fourteenth day of August, 1857, said Nathaniel Leach, as administrator of said Asa Leach, brought a writ of error, returnable to the September term of said Supreme Judicial Court for York county, to have said judgment reversed upon the ground that there was no legal service of said writ, and that, at the time that the service of the original writ in said suit purported to have been made upon him, and for a long time before that date, and, from that time until his death, said Asa Leach was a person *non compos mentis* and incapable of taking care of himself or of manageing his business affairs; that said suit·was duly entered in said Court, and continued from term to term, until the May term of said Court, 1860, when said Court ordered that said judgment of said Josiah F. Leach against said Asa Leach be reversed.

It further appeared that said Nathaniel Leach, as administrator of said Asa Leach, in September, 1860, obtained license from the Court of Probate for said county of York, to sell and convey all the real estate of said Asa Leach, for the payment of his debts and incidental charges, and that, pursuant to said license, he sold, as the property of said Asa Leach, the land described in the plaintiff's writ, to the defendant, on the eighteenth day of March, 1861, by his administrator's deed of that date duly executed and recorded in said registry of deeds; and that, on obtaining said license and making said sale, said administrator observed all the requirements of the law; that said Asa Leach was

seized in fee of the demanded premises, at the time of the levy aforesaid; that he was then in possession of the same, and continued in possession until his death, except so far as the possession was divested by the levy aforesaid, and the seizin and possession delivered to the creditor; that said Josiah lived upon the premises at the time of the suit and levy against said Asa Leach, and continued to occupy, with the consent of said Bryant, until after said sale by said administrator to said Fairfield; that said Asa Leach was a person *non compos mentis*, at the time that the service of the original writ of said Josiah F. Leach against him purported to have been made, and for a long time before that date, and from that time until his death; that said Asa Leach, being *non compos mentis*, as aforesaid, had no guardian at the time of the commencement of said suit against him, nor during the pendency of the same in Court; that he had no attorney and made no appearance in Court, but said judgment was recovered against him by default.

That said Luther Bryant was present at the time of said sale, and notified said Fairfield, and all other persons, that he was the owner of the demanded premises, and forbade the sale thereof, and cautioned said Fairfield, and all other persons, against bidding for or purchasing the premises.

That said Luther Bryant will testify that, at the time of the alleged purchase by him of the demanded premises, he knew of no defect in said judgment of said Josiah F. Leach against said Asa Leach, and never was apprized of any alleged defect, and knew nothing of the condition of the mind of said Asa until after the writ of error was brought; that the alleged purchase by him was in good faith, and that he paid a valuable consideration for said premises.

*S. W. Luques*, in his argument for the demandant, cited Wharton"s Digest, Title Error, p. 777; *Allen* v. *Dundas*, 3 Term R., 129; *Granger* v. *Clark*, 22 Maine, 128; *U. S. Bank* v. *Voorhees*, 1 McLean, 221; *Woodman* v. *Smith*, 37 Maine, 21; *Haskell* v. *Sumner*, 1 Pick., 459; *U. S.*

Bryant v. Fairfield.

*Bank* v. *Bank of Washington*, 6 Peters, 8; Bacon's Abr., Title Error ; *McJilton* v. *Lever*, 13 Ill. R., 487, and cases cited; *McLagar* v. *Brown*, 11 Ill. R., 519; *Lovat* v. *German Reformed Church*, 12 Barb., 67; *Somes* v. *Brewer*, 2 Pick., 184.

*Bourne & Stone*, for the tenant.

The opinion of the Court was drawn up by

DAVIS, J. — The grantor of the demandant, having recovered a judgment against the owner of the land in controversy, extended his execution upon the land, and had it set off to himself in satisfaction of the judgment. After he had conveyed the land to the demandant, his judgment was reversed upon a writ of error. It is admitted that he was an innocent purchaser; nor is any wrong imputed to the judgment debtor, under whom the tenant claims. It is a case where one of two persons may suffer, when no fault is charged against either. Each one has a remedy against the original plaintiff, in case of loss, either by the judgment against him upon the writ of error, or by an action upon his covenants of title and warranty. There are no equities that can affect the case. The title to the land must be determined by the strict and technical rules of law.

There were two modes at common law, in the old English practice, of obtaining satisfaction of a judgment. By a writ of *fieri facias* the sheriff seized and sold the chattels of the debtor, and paid the debt from the proceeds. Or, by a writ of *levari facias*, for want of chattels, the sheriff took the debtor's lands, and appropriated the rents thereof to the payment of the judgment, until sufficient had been received for that purpose.

The statute of 13 Edward 1, c. 18, provided for a writ of *elegit*, by which the sheriff took the chattels, and, for want thereof, a moiety of the lands of the debtor. If he took chattels, they were appraised by a jury summoned for that purpose, and delivered to the creditor at their appraised value, in payment. If he took lands, the rental value there-

of was appraised, and they were delivered to the creditor for a term sufficient to satisfy the judgment.

The statute of 25 Edward 3, c. 13, provided for a writ of *capias ad satisfaciendum*, upon which the body of the debtor could be taken and held until he should satisfy the judgment.

Generally, the creditor could not have all these writs upon the same judgment, but he could elect which to take. In some cases, however, by a special provision of statute, one writ was issued which embraced them all, commanding the sheriff to take the chattels, lands, and, for want thereof, the body of the debtor. This was substantially the same as our writ of execution in this State, though the mode of selling, appraising, or disposing of the lands, or chattels, was different. Chattels, under our statutes, are sold, as upon the old writ of *fieri facias;* while lands are appraised, and delivered to the judgment creditor, generally in fee, but sometimes for a term, as upon the old writ of *elegit.*

A writ of *elegit*, when extended upon lands, and the officer's return thereon, were the judgment creditor's muniments of title. As there were no registry laws, the *elegit* was not recorded. It was therefore essential that it should be returned. *Putten* v. *Purbeck*, 2 Salk., 563.

A judgment, though erroneous, is valid and binding until it is reversed. An execution issued thereon is a full and sufficient justification of the officer who acts by virtue of it, and obeys its commands. And, if he *sells* the chattels of the debtor, the purchaser acquires a good title, though the judgment be afterwards reversed. *Kennedy* v. *Duncklee*, 1 Gray, 65.

The proceedings in this State upon writs of error are the same as at common law. R. S., c. 102, § 7. By c. 138, § 2, of the laws of 1860, it is provided " that, when a debtor's property has been sold by virtue of a writ of execution, and the judgment is afterwards reversed on a writ of error, the title of the purchaser of such property, at such

sale, shall not be affected thereby." This statute merely affirms what has long been the settled doctrine at common law.

According to the English decisions, when a judgment is reversed upon a writ of error, brought by the original defendant, after payment, his remedy depends upon *the manner in which the execution has been satisfied*. If the sheriff has seized and *sold* his property upon the execution, he cannot recover it back; for the officer was justified in selling, and the purchaser acquired a good title. He can only have judgment against the original plaintiff for the amount for which the property was sold. *Backhurst* v. *Mayo*, Dyer, 363; *Dr. Drury's case*, 8 Coke, 281. But, if *the property is delivered to the creditor*, upon an appraisal, as required by a writ of *elegit*, the debtor is entitled to the specific property again. "For the delivery being to the plaintiff himself, it is in law but a bare delivery in specie which ought to be returned in specie again, and doth not alter the property absolutely, but attends the execution, to be good or bad, as the execution." *Hoe's case*, 5 Coke, 90, London ed., 1826, vol. 3, p. 183, note. And, if the creditor sells it before the judgment is reversed, his vendee acquires no better title; for the sale not being required by law, the debtor may recover back the specific property again. *Goodyere* v. *Ince*, Cro. Jac., 246.

Thus, upon the reversal of an outlawry, the party whose lands have been taken is entitled to have them restored. "For by the reversal it is as if no outlawry had been." *Ognell's case*, Cro. Eliz., 270. Nor does it make any difference that the lands, in the meantime, have been sold. "For it is not like a sale made by the sheriff; for the sheriff sells it by authority of law. * * * If the outlawry is reversed, it is as if there was no record; and, therefore, the term being sold, it is tied with the condition, into whosesoever hands it cometh, that if the outlawry is reversed, the term is reduced to the owner." *Eyre* v. *Woodfine*, Cro. Eliz., 278; 2 Hawkins' P. C., 462.

No case in this country has been cited, in which, after an execution has been satisfied by an *extent* upon lands, and a

sale of the lands by the creditor, the debtor has recovered back his lands, upon a reversal of the judgment. In *Horton* v. *Wilde*, 8 Gray, 425, the form of action was not appropriate to raise the question. But, in several cases where the execution has been satisfied by a *sale of chattels*, the general doctrine has been stated according to the English authorities. Thus, in the case of *Kennedy* v. *Ducklee*, 1 Gray, 65, METCALF, J., says, "when a judgment on which execution was regularly issued, is reversed, the property which was taken from the judgment debtor is not restored to him, but restoration is made to him of the amount of money for which the property was sold. There is an exception to this rule, when the property is delivered to the judgment creditor himself, on a writ of *elegit*. In that case the property is restored to the judgment debtor, upon a reversal of the judgment." And, in *Gay* v. *Smith*, 38 N. H., 171, the Court say, "if, upon a *fieri facias*, the sheriff sells to a stranger a term for years, or any personal chattel, and afterwards the judgment is reversed, the party shall be restored only to the money for which the term, or the goods, were sold, and not to the term itself, or the chattels, because the sheriff has sold them by the command of the *fieri facias*. But, if a man has an *elegit,* and the sheriff delivers him a lease by *extent*, and afterwards the judgment is reversed, the debtor shall be restored to the term, and not to the value."

The effect of such a reversal is therefore different in the different States. For while in some of the States equitable interests in lands, like chattels, are *sold* upon the execution by the sheriff, and, in others, the *land itself* is thus sold; in many of them the execution is *extended* upon lands, and they are appraised and set off *to the judgment creditor himself*, as upon an *elegit*. 1 Washb. Real Prop., 464, note. The cases cited by the counsel for the plaintiff, in which the syllabus states the doctrine generally, that the debtor, upon the reversal of the judgment against him, cannot recover back lands taken to satisfy the execution, arose in States

where the land was levied upon by *a sale*, and not by an *extent*.

Thus, in North Carolina, when lands are *sold* by the sheriff upon the execution, if the judgment is afterwards reversed, the plaintiff in error cannot recover the lands again, but must take judgment against the original plaintiff for the amount for which the lands were sold. *Bickerstaff* v. *Dellinger*, 1 Murph., 272. The same reason is given for a similar decision in Illinois. *McJilton* v. *Love*, 13 Illinois, 487.

The writ of *elegit* was so named, because the creditor had his *election*, after obtaining his judgment, either to sue out that writ, or a *fieri facias*, or a *capias*. In this State the creditor sues out a writ of execution that embraces them all, and *he then has his election in regard to its enforcement*, by a sale of chattels, an extent upon lands, or arrest of the body. If he elects to have it *extended upon the lands* of the debtor, his title will depend upon the validity of his judgment, and must fail upon its reversal. Any one who purchases the land of him must run this risk; and there is no greater hardship in this than in any other case of failure of title. He may take care to be secured by the covenants in his deed; and, if he distrusts the ability of the grantor, he need not purchase.

According to the agreement of the parties,

*Judgment must be entered for the tenant.*

Rice, Cutting, Kent and Walton, JJ., concurred.

Appleton, C. J.,—By R. S., 1857, c. 102, § 7, "the proceedings upon writs of error, not herein provided for, shall be according to the common law, as modified by the practice and usage in this State and the general rules of Court."

Errors may be of law or of fact. In the former case, the original judgment will be affirmed or reversed. In the latter it will be affirmed or recalled. That in error of fact the judgment should be recalled, is fully established by the earliest authorities. "Si l'erreur soit erreur en fait et nempe in

record comme sur Infancy, le judgment serra *que pro errore prædicto judicium prædictum revocetur* sans dire *et aliis in recordo.*" Rolles' Abr., 805, 9. And, with this, the later decisions are in accord.

Nor is the distinction thus established without important consequences.

In reversing a judgment for error of fact only, the proceedings complained of as erroneous are reversed, and all prior proceedings remain unimpeached. Hence the original plaintiff, after reversal, may proceed with his suit without commencing *de novo.* Thus, when the error assigned is the appearance of an infant defendant by attorney, the Court will reverse the plea and subsequent proceedings, and let the declaration stand. *Dewitt* v. *Post*, 11 Johns., 460. " The whole cause is removed from the Court below and the record is here, so that we might award a *venire de novo,* if so, we may direct the infant to plead *de novo.*" *Arnold* v. *Sanford*, 15 Johns., 534. That, in such case, the cause should be remanded for trial, is affirmed to be the law in Vermont, in *Barber* v. *Graves*, 18 Vt., 290. The question seems not to have been determined in New Hampshire. *Beckley* v. *Newcomb*, 4 Foster, 359. In this State, where judgments were reversed in proceedings before a magistrate, for a fine for neglect of military duty, the causes were uniformly tried in the Court in which the writ of error was pending.

It would seem, however, that the judgment can only be recalled when the Court in which the error of fact existed is the same by which it is corrected ; for the Court can recal nothing but its own acts. *Camp* v. *Bennett*, 16 Wend., 48. According to the authorities, the proper entry in the case, *Marsh, in error*, v. *Leach*, should have been that the judgment was recalled. An analogous error in the judgment, as entered up, is referred to in *Camp* v. *Bennett*, which was subsequently corrected.

The error of fact, which the writ of error was brought to reverse, was the insanity of the defendant. But that was no error of the Court. The proceedings were according to

the due course of the common law, but the judgment was decided to be erroneous, from the mental incapacity of the defendant in the original action of *Leach* v. *Leach*. The plaintiff, in that action, might have had a good cause of action in whole or in part. It would seem, therefore, that the judgment should have been recalled, for error *dehors* the record. " The first judgment is recalled for error *dehors* the record," remarks PLATT, J., in *Dewitt* v. *Post*, 11 Johns., 460, " but, according to the forms of entries in such cases, the *proceedings* are not reversed and annulled. Tidd's Prac. Forms, 304." Had this entry of revocation been made, the plaintiff, in the original suit, might have proceeded with his cause, after a guardian for the insane defendant had been appointed, and have recovered such judgment as the evidence in the cause should satisfy the jury, before which it was tried, he was entitled to. When the judgment is recalled, it is as though no judgment had been obtained.

In the present case, it appears that there was a judgment rendered, an execution issued, a levy on the lands of the debtor, and a conveyance of the title thus acquired by the creditor to the present plaintiff, long before the proceedings were instituted to reverse or recal the judgment in question. The officer, it is well settled, was protected by the judgment while in force, for whatever he did before its recal or reversal.

The question here to be determined, is the effect of the reversal or recal of the judgment rendered in the action, *Leach* v. *Leach*, upon the levy made on the execution issued therein.

Whether the judgment be recalled or reversed is immaterial, so far as regards the effect upon the levy previously made.

It seems well settled that when personal property or chattels real are sold on execution, the title of the purchaser is protected, notwithstanding the judgment is reversed. But, wherever there is an extent, the title of the judgment creditor fails, notwithstanding he may have aliened the estate

levied upon to a *bona fide* purchaser. In *Dr. Drury's case*, 8 Co., 143, it was held that, if the sheriff sell a term under *fieri facias*, which is reversed for error, the termor cannot maintain ejectment to recover against the vendee under the sheriff. " But, if the term be extended on *elegit*, and the judgment is reversed for error, the term shall be restored. *Bathurst's case*, Dyer, 363 ; Cro. Jac., 246 ; for the delivery being to the plaintiff himself, it is in law but a bare delivery *in specie*, which ought to be restored again in specie, and doth not alter the property absolutely, *but attends on the execution to be good or bad as the execution*—but, if there had been a sale by the sheriff to a stranger, it had been otherwise." *Hoe's case*, 5 Co., 90, note. " So, though the tenant, by *elegit*, has aliened the term, it seems that the defendant shall be restored. According to Coke's report of this case, the term, after the levy, ' *had come into two or three hands;*' yet a writ of restitution was awarded. Cro. Jac., 246. So, if a termor for years is outlawed, he shall be restored to the term, on the reversal of outlawry, though it has been sold by the king to whom it was forfeited." *Goodyer* v. *Junce*, Metcalf's Yelverton, 180, n. The distinction between a sale and an extent has been observed in the decided cases in this country. In *Bickerstaff* v. *Dillenger*, 1 Murph., 272, the Court held, that real estate upon which there had been an extent must be restored, upon a reversal of the judgment, to the debtor.

Upon the reversal of a judgment the plaintiff in error is to be restored to all he has lost by the judgment thus reversed. If property has been sold, he is entitled to restitution for the amount for which the goods were sold, not for their value. If sold below their actual value he has no remedy for the difference between such value and the price obtained. *Gay* v. *Smith*, 38 N. H., 171. When there has been an extent, the plaintiff in error is to be restored to the lands upon which the levy has been made. *Murray* v. *Emmons*, 6 Foster, 523 ; *Little* v. *Bunce*, 7 N. H., 485.

The judgment, having been recalled or reversed, the levy attends upon the execution and follows its fate.

The deed of the infant, or of the insane person, may be avoided, when one arrives at manhood and the other becomes sane. *Roof* v. *Stafford*, 7 Cow., 179; *Gibson* v. *Soper*, 6 Gray, 279.

If infants and the insane may avoid their own acts, they may equally avoid a judgment rendered against them, when, from nonage or mental incapacity, they were incompetent to defend. It may be hard that the plaintiff should fail. It is none the less hard if the infant and the insane are to be deprived of their estates by judgments rendered against them, when thus incapacitated to defend their rights.