## ADAMS & WICKES v. M. C. ODOM.
### No. 7036.

1. **Effect of Reversal Upon Sales Made Under the Judgment.**— The general question as to the effect of reversal of a judgment after property has been sold under it and bought by the person in whose favor the judgment was originally rendered was considered in Stroud v. Casey, 25 Texas, 755, and it was said "the consequence is that the reversal of the judgment puts an end to the title."

2. **Same.**—No proceedings would be necessary to give effect to the reversal as avoiding sales affected by it.

3. **Same—Case in Judgment.**—Illies prosecuted to judgment a suit to foreclose, etc., the judgment being for the amount sued for with decree foreclosing the alleged mortgage upon certain lands named in the mortgage, and also upon certain other lands alleged to have been substituted by parol agreement for other lands. Under the decree the lands were sold, Illies becoming the purchaser. Within two years Castro, the defendant, prosecuted error and the judgment was reversed as to *all the substituted lands*—among which are the lands in controversy. Appellants bought of Castro, appellee of Illies, and is in possession. The process under which the sale was made simply ordered the sheriff to sell the described lands. *Held:*

1. The process could confer, as between Illies and Castro, no power save what the judgment had.

2. As the process contained no power to levy and sell other lands than those affected by the foreclosure, the sheriff could not under it levy upon other lands.

3. No right under the judgment existed to have any particular lands sold other than such as were embraced in the mortgage, and the former judgment of the Supreme Court which declared this swept away all claim of Illies founded upon the sale made under process issued only to carry out the decree of foreclosure.

4. After reversal so much of the decree as directed the sale of lands not embraced in the mortgage as between the parties to it was as though it had never been entered, and process issued under it as between the parties and those claiming under them by conveyance after the reversal can not stand on other ground than does the decree.

APPEAL from Medina. Tried below before Hon. John H. Clarke, Special District Judge.

The opinion states the case.

*Simpson & James* for appellants. — 1. A writ of error is a continua-

tion of the suit, and persons acquiring an interest in the property in litigation between the filing of the suit and the final determination thereof on appeal or writ of error are deemed purchasers *pendente lite,* and if such purchasers are voluntary purchasers from a party to the suit, or parties to the suit, their title is dependent in the final result of the cause on appeal or writ of error. Harle v. Langdon's Heirs, 60 Texas, 560; Randall v. Snyder, 64 Texas, 350; Treadway v. Eastburn, 57 Texas, 212; Stroud v. Casey, 25 Texas, 740.

2. The sale made by the sheriff of the lands in question to J. H. Illies was what is known as a judicial sale, strictly speaking, and such sales unless founded upon a valid decree directing the sale are void. Freem. on Void Jud. Sales, secs. 2, 9; Howard v. North, 5 Texas, 306; Castro v. Illies, 13 Texas, 229. Distinct offices of an order of sale and an execution. Pasch. Dig., arts. 1480, 3784.

*S. B. Easley, Tarleton & Keller, Denman & Franklin,* for appellee.—
Probably no question has been before this court which involves more property and may affect the destiny of more people than this. An inspection of the record shows that what are known as "substituted lands" in Medina County contain 57,120 acres, consisting of small tracts, many of which are held in actual possession under the same title as that of appellee herein.

There is no contention about the following propositions of law and fact:

1. That on June 30, 1852, Illies recovered against Castro a judgment for more than twenty thousand dollars.

2. That said judgment was never superseded, reversed, or modified.

3. That it was duly recorded in Medina County, where the land in controversy was situated, and became thereby a lien on the lands of Castro situated in said county.

4. That Castro owned the lands in controversy at the date of said judgment and the subsequent sale thereunder.

5. That said judgment was a foreclosure of a mortgage, and said "substituted lands" were not contained in the original mortgage, but in the decree of foreclosure were by the court substituted in lieu of certain lands fraudulently disposed of by Castro to evade the mortgage and the lien of said mortgage foreclosed upon said lands.

6. That on the 8th day of June, 1853, with said judgment in full force, Illies sued out under said judgment a writ of execution directed to the sheriff of Medina County, commanding him to sell the lands described in the said judgment to satisfy same.

7. That under said writ the sheriff levied upon and duly sold the land described in said judgment, and after payment of all costs paid over to Illies as net proceeds of said sale $3695.40.

8.   That at said sale Illies paid for the two tracts in controversy $130 ($65 each), and received from said sheriff a deed therefor.

9.   That afterwards Illies sued out an execution on said judgment, upon which execution was credited the said $3659.40 proceeds of said sale.

10.   That afterwards a writ of error was sued out by Castro upon said judgment, and the Supreme Court affirmed the judgment in so far as it adjudged Castro indebted to Illies, but set aside that portion of the judgment which substituted said "substituted lands" into said mortgage and foreclosed the lien of said mortgage thereon.

11.   That if the land in controversy, and in fact all said substituted lands, had been sold under an ordinary execution directing the sheriff to sell any and all lands of Castro to satisfy said judgment, instead of under said writ directing sale of the lands therein described, the sale would have passed title to Illies.

Where the right to sell existed by virtue of the money judgment, the sale was made, and the debtor received the benefit of the sale and made no objection to the form of the writ, the sale can not be held void for matter of form after property rights have grown up thereunder during the lapse of more than thirty years of its supposed validity.   It is now too late for Castro or those claiming under him to raise the technical question that the sales were void because the writ commanded the sheriff to sell only a part of Castro's land instead of the whole.   Castro was not injured, but benefited by the limitation of the writ.   It is settled law of this State that a sale even under a dormant judgment if not enjoined is not void.   Also where the writ was directed to another county than that in which the judgment was rendered when the statute commanded issuance of execution first to the county where the judgment is rendered.   These, like the case at bar, are matters of form which do not go to the power of the officer to make the sale.

Any writ issued to carry into effect the judgment of the court is an execution.   Suppose we strike from the judgment upon which this writ issued the portion thereof substituting these lands and foreclosing the mortgage thereon, we have left a money judgment which by virtue of its record was a lien on this land.   Did not Illies have the right to have it sold?   If so, can it be held void because of the form of the writ?   This writ was issued for the sole purpose of collecting and executing the money judgment, and the foreclosure of the lien is perfectly immaterial, as Castro did not sell and no intervening rights are involved.   If Castro had sold after judgment in District Court and before said sheriff's sale it might have become a question whether the sheriff's sale would relate back to the date of the mortgage or to the date of the judgment foreclosing same, and thus cut out the purchaser under Castro.   The decree of the Supreme Court had no other effect than to decide that the judgment was no lien on the substituted lands.   We are not claiming the benefit of its lien.

This was not a judicial sale as claimed by appellant. The sheriff was to make no report to the court other than he would under an ordinary execution. No confirmation was required by the court. Appellant cites no authority applicable to the case. None can be found. It is *sui generis.* The judgment was valid. The land was subject to sale thereunder. It was sold. Castro received the benefit of the sale. No complaint has been made until the rights of many have grown up thereunder, and now after the lapse of more than thirty years the question is raised as to the validity of the writ. There is no merit in the claim. Had the objection been raised during the life of the judgment an execution could have been had and the land sold under the recorded judgment. The parties after so long an acquiescence in the validity of the sale are bound thereby.

STAYTON, CHIEF JUSTICE.—The parties to this appeal have made an agreed case, under Rule 59, and caused same with brief to be printed, which entitles it to precedence.

The two tracts of land in controversy belonged to Henry Castro on and prior to June 30, 1852, and so continued until after December 24, 1854, unless his title was divested by proceedings between those dates, which will be hereafter stated.

Prior to June 30, 1852, John H. Illies was prosecuting in the District Court for Bexar County a suit against Henry Castro, in which he sought to recover a debt due to him by Castro and to foreclose two mortgages held by him to secure it. All the lands on which Illies might foreclose were situated in Medina County. The two tracts in controversy and many others on which Illies might foreclose were not embraced in either of the mortgages, but he claimed that they should be substituted for lands so embraced in pursuance of a verbal agreement which he claimed had been made between himself and Castro.

On June 30, 1852, a judgment was rendered in favor of Illies for $20,228 with foreclosure of mortgage as asked by him. That judgment stated what lands were covered by the mortgages and what lands were substituted, and directed the sale of all in so far as necessary to discharge the judgment in favor of Illies. The judgment then proceeded as follows:

"And it is further ordered, adjudged, and decreed by the court that in case the proceeds of the sale of the foregoing lands should prove insufficient to pay the amount of this judgment with interest and costs on the sum of twelve thousand five hundred dollars principal and the further sum of five thousand two hundred and twenty-eight dollars and forty-three cents interest on said debt until paid, and also the further sum of two thousand five hundred dollars and costs without interest on the sum of twenty-five hundred dollars, with stay of execution on the sum of six thousand dollars until the defendant Illies shall have filed a bond in the sum of nine thousand dollars with approved security, or

shall have filed such a release or evidence of the payment or cancellation of the drafts for fourteen and sixteen thousand francs as alluded to in the parties' pleading, said stay of execution shall continue to exist until such bond or release are approved by the judge and filed in the district clerk's office of Bexar County; then that execution shall issue against all the goods, chattels, lands, and tenements of said Castro to pay and satisfy the balance which may remain due and unpaid. And that this judgment operate as a general lien upon all the real property and slaves of said Castro, situated in the county of Medina, from the date of its registration in said county and in the county of Bexar from the date hereof. And it is further ordered, adjudged, and decreed that the said John H. Illies do recover of said Henry Castro his reasonable costs in this behalf expended."

On June 8, 1853, a writ was issued from the District Court of Bexar County, directed to the sheriff of Medina County, which contained a full description of the several tracts of land on which mortgage had been declared and foreclosure decreed, which, except as to the description of lands thereby directed to be sold, was as follows:

"*The State of Texas, County of Bexar—To the Sheriff of Medina County, Greeting:*—Whereas, John H. Illies, on the 25th day of June, A. D. 1852, at our District Court hath recovered againt Henry Castro, of Castroville, in Medina County, the sum of seventeen thousand seven hundred and twenty-eight dollars and forty-three cents with interest thereon from the said 25th day of June, 1852, until paid, and also the further sum of two thousand five hundred dollars and costs of suit; and whereas, by said judgment there was a decree of foreclosure of mortgage on the following lands belonging to said Henry Castro, to wit:   *   *   *

"These are therefore to command you that of the mortgaged lands above set forth and described you proceed to sell a sufficient quantity to pay the full amount of this execution together with your legal fees and commissions for collecting the aforesaid amount, and that you have this writ at the clerk's office of said court on or before the return day hereof, certifying how you have executed the same.

"Witness, John M. Carolan, clerk of District Court, and seal of said court, at San Antonio, this 8th day of June, A. D. 1853.

"J. M. Carolan,
"Clerk District Court, Bexar Co.
"By Tho Ward, Deputy."

In pursuance of this writ the lands were all sold by the sheriff of Medina County on July 5, 1853, under a recited levy of date June 10, 1853.

Whether Illies bought all the lands described in the judgment and writ is not made to appear by the agreed statement, but he bought the lands in controversy, for which he bid $130.

The entire amount of sales was $3695.40, for which Illies receipted to

the sheriff on July 11, 1853. The judgment was recorded in Medina County some time in the month of July, 1853, whether before or after the sale made by the sheriff does not appear.

The sheriff made a deed to Illies, and after the return of the writ under which the sales were made an execution issued on which was credited the sum realized on the sale.

Within two years, but after the sales referred to were made, Castro prosecuted a writ of error without supersedeas bond, on which this court rendered the following judgment:

"THURSDAY, December 24th, 1854.

"This cause came on to be heard on the transcript of the record of the court below, and the same being inspected, it is ordered, adjudged, and decreed that the judgment of the court below be modified and rendered here; and this court proceeding to render such judgment as the court below should have rendered, it is ordered, adjudged, and decreed that the judgment and decree of the court below, so far as it relates to the sum due to Illies and his cost, be affirmed; and it is further ordered, adjudged, and decreed that so much of the decree of the court below as decrees the sale of the specific land described in the two deeds of conveyance to Illies and Wurzbach in satisfaction of the money decreed to be due to Illies, as far as it goes, be affirmed; it is also affirmed so far as it directs execution in favor of Illies for any balance remaining due to him after the sale of the land specified in the mortgage deeds; and it is further ordered, adjudged, and decreed that so much of the judgment of the court below as directs the sale of lands not described in the deeds of mortgage but substituted in lieu of a part of the lands so described be and the same is reversed. And it is further ordered, adjudged, and decreed that so much of the decree of the court below as directs a lien on other lands belonging to Castro, the plaintiff in error, not included in the mortgage deeds, be reversed, annulled, and held for naught; and it is further ordered that the defendant in error recover of the plaintiff in error his costs in this court as well as in the court below expended, and this decision be certified below for observance." Castro v. Illies, 13 Texas, 229.

Neither Illies nor Castro conveyed this land until long after the judgment by the Supreme Court.

Appellants claim the land in controversy by mesne conveyances under Castro since the Supreme Court decree, and appellee under Illies since said date. Appellee is in possession.

The agreement as to the question of law to be decided and of other facts on which to base a decree is: "Did John H. Illies acquire title to the two surveys Nos. 131 and 132, district No. 1, in controversy, by virtue of the deed from the sheriff of Medina County to said Illies under the judgment, record thereof, and sale as shown? If so this judgment may be

. affirmed.   If· not this judgment may be reversed and rendered for appel-
·lants for the land in controversy and· the rental value of said surveys
(320 acres) at 5 cents per acre per annum from March 29, 1884, and al-
lowing appellee the value of improvements in good faith thereon in the
sum of $200, and fixing the value of the land at $2 per acre.*"*

If the judgment in favor of Illies had been reversed *in·toto* under' the
rule followed in this State, which seems to be generally adopted, there
could be but little controversy as to the rights of the parties.

The general question as to the effect of reversal of a judgment after
property has been sold under it and bought by the person in.whose favor
the judgment was originally rendered was considered in Stroud v. Casey,
25 Texas, 755, and it was said "the consequence is that the reversal of
the judgment put an end to the title." Freem. on Judg., 481, 482.

To the same effect are the following cases.   Marks v. Cowles, 61 Ala.,·
302; Delano v. Wilde, 11 Gray, 17; Gott v. Powell, 41 Mo., 420; Rey-
nolds v. Harris, 14 Cal., 678; Hubbel v. Broadwell, 8 Ohio, 127; Bryant
v. Fairfield, 51 Maine, 159; Galpin v. Page, 18 Wall., 373.

It would seem to be a useless formality to institute proceedings to have
declared the purchaser's claim invalid when the effect of the reversal is
to declare invalid the proceedings through which such a purchaser sought
to acquire title.

It was suggested in Reynolds v. Hosmer, 45 Cal., 629, that the owner
· after reversal may at his election either have the sale set aside and be re-·
stored to possession or have his action for damages.   ·

We do not understand that the court intended in that case to hold that
in such a case it was necessary for the owner after reversal to take any
steps to avoid a sale; for in that case an application was made in the
Circuit Court to set aside a sale on reversal of the judgment under which
it was made, which was refused, and it was contended that this was an
adjudication that the sale was valid; but the Supreme Court said: "We
do not think so.   When the Supreme Court reversed the judgment of
the Circuit Court and adjudged that the plaintiff had no lien on a por-
tion of the canal, and its mandate was filed in the lower court showing
these facts, the judgment was reversed whether the lower court made any
order conforming its judgment to that of the Supreme Court or not.   If
the plaintiffs have any rights here they come from the reversal by the
Supreme Court and not from any subsequent action or want of action by
the Circuit Court."

In that case the owner of property sold before reversal brought suit for   ·
damages and not for the land sold, and in such a case it may be that
the owner ought to be held to have ratified the sale and the power of the
officer who made it.

The judgment establishing the sum due to Illies having been affirmed
it is contended that the judgment was in so far valid, and that the pro-

cess issued under it conferred lawful power on the sheriff to make the. sale.

It is further contended that the objections raised to the validity of the sale amount at most only to irregularities. The court rendering the judgment having jurisdiction of the parties and subject matter, a sale made to a stranger before reversal under the process issued would have passed title not subject to be defeated by subsequent reversal.

As between Castro and Illies, however, the process issued could confer on the officer who made the sale no power other than such as the judgment gave, and the extent and character of this, as between them, must depend on their rights as ascertained and declared by the judgment rendered in this court on writ of error. That judgment in effect declared that the land in controversy could not legally be sold on such process as was issued and executed.

The statutes in force at the time provided what the judgment or decree for the foreclosure of a mortgage should be, as well as for the further procedure, and the judgment and process issued under it were such as were appropriate for the enforcement of a specific lien. Pasch. Dig., art. 1480.

That statute required the judgment to direct an order of sale to issue to the sheriff directing him to sell the mortgaged property, and it was only in the event that the same could not be found or should not sell for a sum sufficient to pay the judgment and costs that process was authorized to issue under which other property might be seized and sold to satisfy the judgment.

If the writ under which the land in controversy was sold had contained a command to the sheriff, in the event the mortgaged property did not sell for enough to satisfy the judgment and costs then to levy upon and sell other property sufficient for that purpose, it might be held that the sale was valid and the issuance of such process before the mortgaged property was sold and found insufficient only an irregularity. The process, however, contained no such demand, but required the sale of the property in controversy absolutely if necessary to satisfy the judgment, and this cut off the right of Castro to point out other property, as he would have been entitled to do under the law, after the property really mortgaged had been sold and found insufficient. Pasch. Dig., art. 3775.

It is said: " If the land in controversy, and in fact all said substituted lands, had been sold under an ordinary execution directing the sheriff to sell any and all lands of Castro to satisfy said judgment instead of under said writ directing sale of the lands therein described, the sale would have passed title to Illies."

If this proposition be conceded, and if it could be admitted that under a judgment foreclosing a mortgage and directing the specific property to be sold for its satisfaction an ordinary execution could be issued, levied,

and property sold under it before a sale of the mortgaged property, this. would not relieve appellee from the difficulty that meets her.

The officer had no such writ, and could only do that under the process. held by him which it commanded had the judgment under which it issued been entirely lawful.

In Maupin v. Emmons, 47 Mo., 308, it appears that under the statutes of Missouri, as in many of the other States, when a fieri facias has been levied, but returned without sale, a venditioni exponas may issue directing the sale of the property levied on, and in the event that be deemed not sufficient to satisfy the judgment, commanding the sheriff to seize and sell other property.

A writ issued directing the sale of property seized under the writ returned, but omitting the command to seize and sell other property in the event the officer deemed the former levy insufficient. The former levy did not embrace a tract of land, but the sheriff under the last writ levied upon it and sold, and in a contest growing out of this it was claimed that the sheriff was clothed with the same power as though the command to make an additional levy, if necessary, had been inserted in the writ. The court, however, said "this proposition runs counter to all our ideas of the powers and duties of sheriffs. It has always been considered that he was but the executive officer of the court, bound to obey its lawful commands, and in executing a writ that he must look to the face of it for the extent and boundary of his duties and his powers. It does not. matter what writ might have been issued—to what writ the party was entitled by law if he had chosen to sue it out; when it is issued and placed in the officer's hands his only duty is to see what are its commands, and if he finds them within the authority of the court he must obey them. But he can not go beyond those commands or question their regularity. If he is ordered to sell certain property the order gives him no authority to seize and sell other property." Quinn v. Wisnal, 7 Ala., 645; Canaday v. Nuttall, 2 Ire. Eq., 265; Allernong v. Allison, 1 Hawks, 325;. Dunn v. Nichols, 63 N. C., 109.

In Reynolds v. Harris, 14 California, 678, it appeared that a court having jurisdiction of the parties and subject matter entered a judgment foreclosing mortgages into which entered an improper order as to the manner of sale in foreclosure. A question arising as to the validity of a sale made under the judgment before its reversal, it was held that the reversal destroyed the title acquired by an assignee of the judgment who purchased under it, and in disposing of the question it was said: "We see no difference between the total reversal of the judgment in that case. so far as this question is concerned and a partial reversal, for the effect. of the reversal was to declare that this sale, as ordered by the decree of the court below, was improperly so ordered. and that the sale should have

been made by the law of the land in a different manner in substance and in fact."

Before the reversal of the judgment obtained by Illies the sales made under the process issued not having realized a sum sufficient to satisfy it, execution issued and was levied on other property of Castro, which was sold, and in a controversy as to that it was claimed that the sale under execution was invalid on the ground that the mortgaged property had not been first sold, and on the further ground that the reversal of the judgment vacated all sales made under it.

In disposing of that case it was held "that all the mortgaged lands included in the decree, and *all which by the judgment of this court were subject to seizure and sale under the decree,* were first sold. The judgment was not superseded upon prosecuting the writ of error. It was therefore an authority for the issuance of execution, and it can not affect the title of the purchaser at the sale that property was not sold under the decree to which the defendant in execution had no title and upon which the decree could not legally operate, or *which was not legally subject to seizure and sale on execution under the decree.*" Castro v. Illies, 22 Texas, 496.

The facts on which the rights of the parties to this action depend were before this court when the decision in the case last referred to was made, and we have in it a recognition of the fact that the property in controversy was not subject to seizure and sale under the decree of foreclosure, although it would have been on execution issued on the general judgment for money.

No right existed under the judgment to have any particular land sold other than such as was contained in the mortgages, and the judgment of this court which declared this swept away all claim of Illies founded on the sale made under process issued only to carry out the decree of foreclosure.

After reversal so much of the decree as directed the sale of land not embraced in the mortgages as between the parties to it was as though it had never been entered, and process issued under it as between such parties and these claiming through them by conveyance made after reversal can not stand on other ground than does the decree.

It is urged that Illies acquired a lien on the land, and that for this reason sale made under the process issued should be sustained. That no lien was given by the decree was decided (Castro v. Illies, 13 Texas, 236), and that none was acquired by registration of the judgment is clear. Had a lien been acquired in either of these ways we do not see that this would in any manner affect the question involved in this case.

No facts are shown which would operate as an estoppel between Castro and Illies or between their vendees.

The judgment of the court below will be reversed and here rendered for appellants, in accordance with the agreement of the parties.

*Reversed and rendered.*

Delivered June 4, 1889.