[No. 2598. Decided January 10, 1898.]

D. H. SINGLY, *Appellant*, v. DELOS WARREN *et al.*, *Respondents*.

EXECUTION SALES — REVERSAL OF JUDGMENT — BONA FIDE PURCHASER.

The title acquired by a judgment creditor upon the purchase by him of the debtor's real property at execution sale is subject to defeasance upon the subsequent reversal of the judgment, and a grantee of the judgment creditor, though not a party to the action and in ignorance of the defect, does not occupy the position of an innocent purchaser in good faith, and consequently acquires no greater right by a conveyance from the judgment creditor than the latter had.

Appeal from Superior Court, Spokane County.—Hon. NORMAN BUCK, Judge. Reversed.

*Crow & Williams*, and *Blake & Post*, for appellant.

*Graves, Wolf & Graves*, for respondents.

The opinion of the court was delivered by

ANDERS, J.—This action was instituted by appellant to recover the possession of certain real estate in the county of Spokane. Both parties claim title through Albert English

and Sylvester S. Callahan, each of whom was formerly owner of different portions of the land. On April 28, 1894, English and Callahan sold the premises in controversy to one Rilda Grinstead, a part of the consideration being the assignment and transfer of a certain judgment held by Miss Grinstead against the South Harbor Land and Improvement Company. In September of the same year, English and Callahan sued Miss Grinstead, in the superior court of Spokane county, to enforce a vendor's lien upon the land, on account of alleged misrepresentations on her part concerning the value of the judgment aforesaid. They recovered a judgment against her in accordance with the prayer of the complaint. She thereupon appealed to this court, where the judgment was reversed on October 21, 1895, and their complaint was ordered dismissed, after a hearing upon the merits. The judgment in the lower court was rendered on June 4, 1895. Prior to that time, and while the cause was pending in the superior court, and on January 25, 1895, Miss Grinstead conveyed the land in question to one Ames, who, on February 25, 1895, conveyed it to the appellant here. It is through these conveyances that the appellant claims title. Miss Grinstead's appeal was effected on July 18, 1895, by the filing of notice of appeal and a bond for costs, which did not supersede the judgment. After the appeal had been effected, and on July 20, 1895, the land was sold by the sheriff upon an execution issued upon the judgment to Albert English, one of the plaintiffs in that cause, for the sum of $360, but no deed has ever been executed by the sheriff in pursuance of said sale. On September 25, 1895, and while said appeal was pending in this court, English signed and acknowledged a deed of the land so purchased by him to his co-plaintiff Callahan, and the latter on the same day signed and acknowledged a like deed to the respondent Tindall.

These deeds were not recorded until after the opinion of this court had been rendered, and were then presented for record by Callahan. The respondents, Warrens, claim to hold as tenants of Tindall. It appears from the testimony of Callahan and Tindall that the land was sold to Tindall for the sum of $3,500, $355 of which was paid in cash at the time of the transfer, and that a debt of some ten years' standing of Callahan to Tindall, evidenced by a promissory note, was applied on the purchase price, the same amounting at that time to $750, and likewise an account of some $50 due Tindall from Callahan on account of hogs sold. It also appears that the sum of $21 due for grain sold Callahan, and the sum of $75 for hay, were also applied in part payment for the land. No further payments are shown, or claimed, to have been made by Tindall before he learned of the reversal of the judgment, and the alleged final payment was not in fact made until a few days previous to the trial of this cause. Tindall testified that at the time he received his deed he had no actual knowledge of the pendency of the appeal, although he admitted that he was cognizant of the litigation, and had, or saw, copies of the pleadings in the case and the judgment of the trial court. At the time the appeal was effected the defendant in that action filed a *lis pendens* in the office of the county auditor of Spokane county. On the close of the evidence in this case both parties moved the court for a peremptory instruction requiring the jury to find in their favor. Appellant's motion was overruled and respondents' motion was sustained, and the court thereupon discharged the jury and gave judgment in favor of the respondents. A motion for a new trial having been made and overruled, the cause was appealed to this court. It will thus be seen that the sole question presented for our determination is whether the respondent Tindall obtained a title by his deed from

Callahan which was not affected by the reversal of the judgment upon which it was based; or, in other words, whether Tindall is a purchaser in good faith within the purview of the law. Our statute provides:

"If by a decision of the supreme court the appellant becomes entitled to a restoration of any part of the money or property that was taken from him by means of the judgment or order appealed from, either the supreme court or the court below may direct an execution or writ of restitution to issue for the purpose of restoring to the appellant his property, or the value thereof. But property acquired by a purchaser in good faith, under a judgment subsequently reversed, shall not be affected by such reversal." Laws 1893, p. 132, § 27 (Bal. Code, § 6526).

And in contemplation of this section an execution plaintiff is not a purchaser in good faith in the sense that he is entitled to retain property purchased by him under a judgment subsequently reversed. His title is divested by the reversal, and the parties to the litigation are restored to the same position in which they were prior to the rendition of the judgment. *Benney v. Clein,* 15 Wash. 581 (46 Pac. 1037).

This doctrine is in harmony with the great weight of authority outside of this state, and it is frankly conceded by the learned counsel for the respondents to be in consonance with the spirit and meaning of our statute.

"Upon the reversal of the judgment against him," says Mr. Freeman, "the appellant is entitled to the restitution from the respondent of all the advantages acquired by the latter by virtue of the erroneous judgment. The successful appellant is entitled to a restitution of everything still in possession of his adversary in specie; not the *value,* but the *thing.* If money has been collected by the plaintiff in the judgment, whether under execution or not, an action lies against him to recover it back." Freeman, Judgments (4th ed.), § 482. See, also, *Bank of United States v. Bank of Washington,* 6 Peters, 17.

The contrary rule is maintained in *Bickerstaff v. Dellinger*, 1 Murph. 272, and by some decisions in the state of Kentucky, beginning with *Parker v. Anderson*, 5 T. B. Mon. 451. And the same principle was asserted by Mr. Justice FIELD, in *South Fork Canal Co. v. Gordon*, 2 Abb. 479 (22 Fed. Cases, 328), and by one of the judges in the case of *McAusland v. Pundt*, 1 Neb. 211 (93 Am. Dec. 358). In no other cases that we are aware of has this rule ever been adopted. But, that a stranger to the record, who, in good faith, purchases land at an execution or judicial sale under a valid judgment, which has not been superseded by the filing of a proper bond, acquires rights which are not affected by a subsequent reversal of the judgment, is a doctrine universally announced by the courts. This rule has been recognized from very early times, and the reason of it is, as stated in *Manning's Case*, 8 Coke, 192, and many subsequent cases, that if the title obtained by the purchaser in such cases were avoided, the vendee would lose both his property and his money, and great inconvenience would therefore follow, as no one would buy of the sheriff in such cases, and execution of judgments would not be done. *Corwith v. State Bank*, 15 Wis. 289. See, also, *Woodcock v. Bennet*, 1 Cow. 734 (13 Am. Dec. 568). Our law, like the law elsewhere, permits judgments and decrees to be enforced during the pendency of appeals unless a bond to stay proceedings is given as required by law, and the courts have always construed the law so as to inspire confidence in judicial and execution sales by protecting *bona fide* purchasers at such sales from loss or injury by reason of erroneous judgments or decrees. It would be unjust to require such purchasers to suffer loss on account of errors of the trial courts of which they had no knowledge, and which they were nowise instrumental in producing. And such a requirement would be contrary to the set-

tled policy of the law to encourage bidding at judicial sales, and to prevent the property of debtors from being sacrificed thereat. Freeman, Judgments (4th ed.), § 484; *Marks v. Cowles*, 61 Ala. 299.

But it is strenuously contended on behalf of the respondents that inasmuch as Tindall was a stranger to the judgment which was reversed, he is entitled to the same protection which is extended to a third person who is a *bona fide* purchaser at a judicial sale, and the following cases are cited in support of this contention. *Lovett v. German Reformed Church*, 12 Barb. 83; *McAusland v. Pundt*, *supra*; *Taylor's Lessee v. Boyd*, 3 Ohio, 354 (17 Am. Dec. 603); *Guiteau v. Wisely*, 47 Ill. 436; *Horner v. Zimmerman*, 45 Ill. 14; *Wadhams v. Gay*, 73 Ill. 415; *McCormick v. McClure*, 6 Blackf. 466 (39 Am. Dec. 441); *McBride v. Longworth*, 14 Ohio St. 351 (84 Am. Dec. 383); *Little v. Bunce*, 7 N. H. 485 (28 Am. Dec. 363); *Bank of United States v. Bank of Washington*, 6 Pet. 16.

It must be conceded that the language used in some of these decisions affords some foundation for the respondents' contention. But it appears to us that, when considered in the light of the facts presented by the record, they do not go to the extent claimed for them on the part of respondents. In *Lovett v. German Reformed Church*, the question at issue was which of two sets of individuals were the rightful officers of the corporation. The first party having by a decree of the chancellor been declared the rightful officers, under the authority given such officers by law, executed a mortgage on the corporate property. Thereafter the other party appealed from the decree of the chancellor, and it was reversed and they were restored to office. In a suit to foreclose the mortgage given while the first set of officers were acting it was held that the mort-

gage constituted a valid lien.  In the course of the opinion the court remarked:

" Indeed, unless the decree of a court of competent jurisdiction protects third persons, not parties to the suit, dealing with the successful party on the faith of the decree, no judgment can be of any avail until it shall have received the sanction of the highest tribunal in the land, or until the time for appealing shall have expired."

While we have no doubt of the correctness of the decision of the court in that case, we cannot agree with the observation just quoted, for it cannot be true, as stated therein, that *no* judgment can be of any avail until it shall have received the sanction of the highest tribunal in the land or until the time for appealing shall have expired, unless the particular parties mentioned are protected, for the reason that judgments *are* of avail, according to all of the decisions, in favor of third persons who become *bona fide* purchasers at judicial sales, and of their vendees.

The case of *McAusland v. Pundt*, which is perhaps the strongest case cited by the respondents, can be distinguished from the case at bar by the fact that there the party claiming under the successful party to the judgment was invested with the legal title by the reception of a deed to the property in question.  And, besides, the court in that case had under consideration a statute which provided that a reversal of a judgment should not defeat the title of the purchaser, which, it will be observed, is much broader than our statute;  and the same may be said of *Taylor's Lessee v. Boyd*, 3 Ohio, 354, in which case it also appears that the title of the purchaser at the sale had become absolute, which, as before stated, is not the fact in this case.  In that case, too, the party who purchased at the sale did so before citation in error had been served, which fact also distinguishes that case from the present one.  The same

is also true with respect to the case of *McCormick v. Mc-Clure*, in which an innocent assignee of the plaintiff in execution was permitted to hold the property purchased by him. The case of *McBride v. Longworth* is an exceptional one, and was so considered by the court. In that case one lien holder, a party to the action, purchased the incumbered property at a judicial sale, and the proceeds were distributed among the several lien holders, and the court refused to require such purchaser to make restitution.

*Little v. Bunce*, appears to have but slight, if any, bearing upon the proposition contended for by the respondents. The case of *Guiteau v. Wisely* would seem, from the language found in the opinion of the court, to have held that an innocent assignee of the certificate of purchase at a sheriff's sale was a *bona fide* purchaser, but in the later case of *Roberts v. Clelland*, 82 Ill. 541, the same court states, referring to that case, that it does not declare an innocent purchaser of the certificate of sale will not be affected by the reversal of the judgment or decree in favor of his assignor.

" The extent," says the court, " of that decision is, that where the assignee bought before reversal of the judgment, and obtained a sheriff's deed, his rights, like those of a third party purchasing at a judicial sale, will not be invalidated by a subsequent reversal of the judgment."

In view of what is there said, the Illinois cases cited by the respondents are of little value as authority in favor of their contention. In *Bank of United States v. Bank of Washington*, it is stated by the court that as respects third persons, whatever has been done under the judgment whilst it remained in full force is valid and binding, but that this rule is not applicable in all cases is shown by the later case of *Galpin v. Page*, 18 Wall. 350, where the court held that an attorney purchasing property at a judicial sale

under a decree in proceedings in which he acted as an attorney acquired a title which was divested by the reversal of the decree.

But if it be true, as claimed, that the foregoing cases cited by the respondents justify the judgment of the learned superior court, we are nevertheless of the opinion that they are not supported by sound reason, and that they are contrary to the weight of authority. Mr. Dembitz in his work upon Land Titles (Vol. 2, § 164), says:

" The weight of opinion gives to a purchaser from the plaintiff no greater right to hold on to his purchase than he has himself; the estate gained by the plaintiff at a sale under an erroneous judgment being held in the light of a defeasible fee, which does not become absolute by being sold to a party ignorant of the defect."

In *Marks v. Cowles, supra,* every phase of the question now under consideration was discussed with great learning and ability, both upon principle and authority, and the learned court came to the conclusion that an assignee or vendee of one who purchased under an erroneous decree in his own favor stands in the position of his vendor, and that a subsequent reversal defeats his title, and that such assignee or vendee is not entitled to protection as a *bona fide* purchaser, without notice and for value.

In *Bryant v. Fairfield,* 51 Me. 149, it was held that, where land was set off to a creditor in satisfaction of a judgment and the judgment was afterwards reversed on a writ of error, the debtor was entitled to the land again, and he might recover it of one who purchased it of the creditor before the reversal of the judgment without notice of any defects therein. In that case the court, after having described the modes of satisfying judgments in England under writs of *fieri facias,* of *clegit* and of *capias ad satisfaciendum,* said:

" In this state the creditor sues out a writ of execution that embraces them all, and *he then has his election in regard to its enforcement,* by a sale of chattels, an extent upon lands, or arrest of the body. If he elects to have it *extended upon the lands of the debtor,* his title will depend upon the validity of his judgment, and must fail upon its reversal. Any one who purchases the land of him must run this risk; and there is no greater hardship in this than in any other case of failure of title. He may take care to be secured by the covenants in his deed; and, if he distrusts the ability of the grantor, he need not purchase."

See, also, *Adams v. Odom,* 74 Tex. 206 (15 Am. St. Rep. 827, 12 S. W. 34); *Dunnington v. Elston,* 101 Ind. 373; *Griswold v. Ward,* 128 Ind. 389 (27 N. E. 751); *Reynolds v. Harris,* 14 Cal. 667 (76 Am. Dec. 459); *Delano v. Wilde,* 11 Gray, 17 (71 Am. Dec. 687); *Cummings v. Noyes,* 10 Mass. 434; *Jackson v. Cadwell,* 1 Cow. 622.

It is claimed, however, by the learned counsel for the respondents that the case of *Bryant v. Fairfield,* and the Massachusetts cases above cited, are not authority in this case because of the difference between the extent of a debtor's land by *elegit* and a sale upon execution. It is conceded that when lands were extended under a writ of *elegit* according to the English practice, and the somewhat analogous practice in the New England states, they were restored to the judgment debtor upon a reversal of the judgment. The reason given for the rule is that the title of the purchaser depended upon the existence of the judgment, and was necessarily annulled by its reversal; and, for the same reason, it would seem that lands taken from the defendant by the plaintiff by virtue of an erroneous judgment ought to be restored to him upon the reversal of the judgment. A valid judgment is an essential requisite to a valid sale, and without such judgment no sale can be supported. Upon this question the supreme court of Wisconsin in the case of *Corwith v. State Bank, supra,* said:

" The right of the debtor whose lands are purchased by the creditor on execution under our statute cannot be distinguished on principle from those of the debtor whose property is under extent according to the English practice. In *Goodyer v. Junce,* Yelv. 179, the distinction between a sale by the sheriff to the party himself and such sale to a stranger, is expressly noted, and it is said the latter only will be protected. If the former be the purchaser, restitution will be awarded."

And in *Marks v. Cowles, supra,* the same view is expressed in the following language:

" It seems to us rather a shadowy than a substantial difference, so far as this question is concerned, between the extent of a debtor's lands by a writ of *elegit* and a sale upon writs of *fieri facias,* now that lands are subjected to sale for the satisfaction of judgments, and such writs are framed so as to confer authority to levy and sell alike goods and chattels, and lands and tenements. When lands were extended by *elegit,* the judgment was of the essence of the title—an indispensable muniment, and so it remains today when there is a sale and conveyance upon a writ of *fieri facias.* It must be shown to support an action by the purchaser for the recovery of the lands, or to maintain his possession, if that is assailed by the party to whose title he claims by operation of the judgment to have succeeded."

Conceding, as claimed, that Tindall had no actual notice of the pendency of the appeal when he purchased the lands from Callahan we are of the opinion that it cannot be said, in view of the better authorities, that he was a *bona fide* purchaser in contemplation of law. As has already been stated, neither he nor his grantor has ever received a deed of the land, and no one can be deemed a *bona fide* purchaser who does not purchase the legal title. See Rorer, Judicial Sales (2d ed.), § 576; *Wilson v. Morrell,* 5 Wash. 654 (32 Pac. 733); *Taylor v. Weston,* 77 Cal. 534 (20 Pac. 62); *Reynolds v. Harris, supra.*

A certificate of sale executed by a sheriff does not pass title. At most it is only evidence of an inchoate estate which may or may not ripen into an absolute title. While the purchaser at a judicial sale may be entitled to the immediate possession and the rents and profits of the premises, he cannot be said to hold the title until he receives a deed in pursuance of the sale. *Hays v. Merchants National Bank*, 14 Wash. 193 (44 Pac. 137); *Reynolds v. Harris, supra*; *Roberts v. Clelland, supra*.

In the case last cited, the court, in construing the statute relating to the assignment of certificates of sale made by a sheriff, observed that

" The construction we have indicated the statute should receive, stands to reason. An innocent purchaser is one that has the legal title to property, and has paid therefor a valuable consideration, without notice of defects or vices in the title. That cannot be predicated of a mere assignee of a certificate of sale, issued to a purchaser under judicial sentence, who is chargeable with notice of all irregularities that may invalidate such sale. As was said in *Bowman v. The People, ante*, p. 246, such purchaser does not take the land itself by his bid, but only an incipient interest, that may or may not ripen into an absolute estate. It is simply stating a truism, to say a party cannot assign that which he hath not. Such purchaser has not the legal title to the property bought, and of course cannot assign it."

Neither, in our judgment, for the same reason, can he sell it to a third person so that the latter may hold it as a *bona fide* purchaser. To hold that the respondent Tindall in this case has a good title to the premises in dispute would be to hold that his grantor was able to convert a defeasible into an indefeasible estate by the mere instrumentality of a conveyance. If the owner of a determinable fee conveys in fee, the determinable quality of the estate follows the transfer. 4 Kent, Commentaries, 10.

The respondent Tindall cannot be deemed a *bona fide* purchaser for value without notice for the further reason that he failed to take notice as required by law of the source and quality of the title of his vendor. In *Reynolds v. Harris, supra,* it was said that

" The grantee is charged with notice of the deeds and documents from which he deraigns his title. When he purchases from the plaintiffs in the execution, he is presumed to know the course of the proceedings and state of the record from which the title of his grantor proceeded, and he is presumed to know, too, that the right of the defendant is to take an appeal within the statutory period, and also the consequences of the successful prosecution of this right; and he must be supposed to purchase with reference to these things."

And the supreme court of Indiana observed in *Dunnington v. Elston, supra,* that

" Where the only title of a purchaser rests upon the judgment or decree of a court of record, inasmuch as he is bound to take notice of the source of his title, he is charged with notice of all the incidents to which the judgment is subject. He is conclusively presumed to know that the judgment may be appealed from within a limited time, or that by the payment of costs the judgment may be vacated within a time fixed by law."

And the supreme court of Alabama, in *Marks v. Cowles,* very forcibly and clearly announced the same doctrine.

If the respondent who claims to be the owner of this land had examined the records in the office of the county auditor he would have found a deed of the land to the appellant upon the records; and if he had examined the records in the superior court they would have disclosed the fact to him that neither English nor Callahan had any title to the premises, and that an appeal was then pending which might result in overthrowing the judgment which was the foundation of all rights which his vendor claimed in the

premises. And that being so, he must abide the consequences of his own negligence. If he is the loser in the transaction between himself and Callahan, he must look to the latter for redress.

For the foregoing reasons the judgment appealed from will be reversed and the cause remanded with directions to enter judgment in favor of the appellant.

GORDON, DUNBAR and REAVIS, JJ., concur.