[No. 12585.   Department Two. — December 20, 1889.]

MURDOCK McINTYRE, ADMINISTRATOR, ETC., OF
CHARLES McINTYRE, DECEASED, APPELLANT,
v. DWIGHT SHERWOOD, RESPONDENT.

SWAMP-LAND — PREFERRED RIGHT OF PURCHASE — AFFIDAVIT OF AP-
PLICANT — MEANING OF THE WORDS "SETTLERS" IN SECTION 3443 OF
THE POLITICAL CODE. — A man may have a preferred right of purchase
of swamp-land by reason of his occupation and improvement of it, with-
out actually residing upon it.   And the affidavit required by section
3443 of the Political Code, that there are no "settlers" on the land, etc.,
is false, if the evidence shows that another had improved and was oc-
cupying the tract, though he was not actually residing upon it.

ID. — EFFECT OF FALSE STATEMENT IN AFFIDAVIT OF THE APPLICANT. —
If a material statement in an affidavit for the purchase of public land be
false, the applicant acquires no right by his proceedings.

APPEAL from an order of the Superior Court of Lake
County granting a new trial.

The facts are stated in the opinion.

*Bond & Fishback, E. W. Britt,* and *R. C. Horne,* for
Appellant.

*R. W. Crump,* for Respondent.

HAYNE, C. — This was an action to determine a con-
test over the right to purchase from the state certain
swamp and overflowed land.   The trial court gave judg-
ment for the plaintiff, but subsequently made an order
granting a new trial, from which order the plaintiff ap-
peals.

The plaintiff's proceedings in the land-office were in
proper form.   And the evidence showed without conflict
that he took possession of the land " fifteen or twenty "
years ago, when " it was mainly a tule-swamp on which
the water stood a great part of the year "; that he dug
ditches to drain the land, fenced it, and has ever since
been in possession, and has cultivated most of it, but
has never resided on it.   He resided in a house upon an

adjoining tract about a quarter of a mile from the land in controversy,— the whole being " inclosed in a general inclosure embracing about one hundred acres, and constituting one farm."

Upon this evidence the court instructed the jury that it was not necessary that the plaintiff should reside upon the tract in controversy; and under this instruction the jury found that the plaintiff was a "settler" upon the land at the time the defendant's application was made. The court filed findings of its own, repeating the fact found by the jury, and expressly finding that the defendant, "in his affidavit stated, among other matters, that at the time of making his said affidavit, there were no settlers on said land; that such statement was and is false and untrue." The court further found that the affidavit of the defendant "contained no allegation or statement showing that said land had been segregated more than six months by authority of the United States."

Upon these findings there can be no question that the judgment against the defendant was right. For the statute requires that the affidavit of the applicant shall state either that there are no settlers upon the land at the time of the application, or if there are, that more than six months has elapsed since segregation by authority of the United States. (Pol. Code, sec. 3443.) And it is settled that if a material statement in an affidavit for the purchase of public land be false, the applicant acquires no right. (*McKenzie* v. *Brandon,* 71 Cal. 211; *Plummer* v. *Woodruff,* 72 Cal. 31; *Harbin* v. *Burghart,* 76 Cal. 119; *Taylor* v. *Weston,* 77 Cal. 535.)

It appears, however, that the court granted the new trial upon the ground that the evidence showed that the plaintiff was not a "settler" within the meaning of the provisions of the Political Code in relation to the matter, and that therefore the affidavit of the defendant was not false. And the court arrived at this last conclusion

through its interpretation of the case of *Mosely* v. *Torrence,* 71 Cal. 318.   In that case the appellate court construed section 3 of article 17 of the constitution, which provides that "lands belonging to this state *which are suitable for cultivation* shall be granted only to actual settlers"; and the decision was, that the phrase " actual settlers," as used in the provision, meant "actual residents."   The language of the court was, that "actual settlement means actual residence."   But the provision of the constitution construed in that case is restricted in terms to lands "which are suitable for cultivation." Swamp-lands are defined to be those which are not suitable for cultivation.   (U. S. Rev. Stats., sec. 2481.)   Hence the constitutional provision above referred to does not apply, and the *decision* in *Mosely* v. *Torrence* is not in point.

It is argued, however, that the opinion defines the phrase " actual settlers," and that such definition ought to apply here.   " It is too plain to admit of argument," says the learned counsel, " that if actual settlement means actual residence, then settlement simply means residence."   But we do not quite see the force of this argument.   In the first place, a word or phrase may mean one thing in one connection, and another thing in a different connection.   And in the second place, not only is the connection different, but the phrase itself is different.   The phrase construed in *Mosely* v. *Torrence* is " actual settlers."   This occurs, not only in the constitutional provision referred to, but also in the statute which deals with lands which are suitable for cultivation.   (See Pol. Code, sec. 3495.)   When, however, the statute comes to provide for swamp-lands, it omits the word " actual," and speaks simply of " settlers."   This word " actual " is not unusual in legal phraseology, and is used as the opposite of constructive.   Thus we speak of actual possession, actual notice, actual fraud.   But whatever may be the strict and literal signification of

the word, it is not to be unnecessarily assumed that in
such documents as constitutions and codes, or even
decisions, words are used without meaning.  Therefore,
it is fair to presume that the law-givers meant some-
thing by the use of the word "actual"; that they sup-
posed it added something to the meaning of the word
"settlers"; that when they omitted it, they intended
something different; and that when the court said that
"actual settlement means *actual* residence," it implied
that there might be a residence or settlement which was
not actual.  We do not think, therefore, that the re-
spondent can build a satisfactory argument upon the
word "settlers" alone.  And we think that a consid-
eration of the nature of the case and the provisions of
the statute will show that his position cannot be sus-
tained.

Swamp and overflowed land, as we have seen, is *ex vi
termini* land which is not suitable for cultivation.  It
is still less fitted for residence.  Consequently, neither
the constitution nor the code requires that the applicant
shall reside or "settle" on it before he can purchase.
This is conceded by counsel.  Nevertheless, although a
man is not required, and may not choose, to reside in a
swamp, he may have expended time and money in
draining and fencing it, so as to render it fit for future
cultivation or residence.  And when one has done this,
it was not intended that another should be allowed to
appropriate the improvements of the former merely be-
cause he has managed to get in his application first.
Accordingly, it is provided that one who has made such
improvements shall have a preferred right of purchase
for a certain time.  The provision in this regard is as
follows: "Settlers upon swamp and overflowed lands
belonging to the state, who occupy the same for farming
or grazing purposes, and whose occupation is evidenced
by actual inclosure, or by ditches or monuments show-
ing the actual extent thereof, *are preferred purchasers* for

such lands for six months after segregation." (Pol. Code, sec. 3442.)

It seems plain that the preferred right of purchase given by this section does not depend upon residence. There would have been no sense in requiring residence as a condition of a preferred right of purchase when it is not a condition of a general right of purchase. The purpose simply was to give the man who makes improvements upon swamp-land a reasonable chance to purchase it, and to prevent his improvements from being appropriated by others. This purpose does not require that he shall actually reside on the land. And the language of the provision does not indicate anything of the kind. The " settlers " spoken of in the section are those who " occupy the same for farming or grazing purposes." Occupation is ordinarily synonymous with actual possession. (*Lawrence* v. *Fulton*, 19 Cal. 690; *McKenzie* v. *Brandon*, 71 Cal. 211.) And as there may be actual possession without residence, it would seem to follow that there may be occupation, and consequently settlement, without residence. Moreover, the section expressly states that the occupation is to be " for farming or grazing purposes," and is to be evidenced in a specified way. We conclude, therefore, that the word " settlers," as used in section 3442, does not require residence upon the land.

The provision of the next section (which is the one upon which the respondent bases his argument) provides that the applicant, to purchase swamp-land, shall make affidavit that he " knows of his own knowledge that there *are no settlers* thereon; or if there are, that the land has been segregated more than six months by authority of the United States."

The word " settlers " here is evidently used in the same sense as in the preceding section. The purpose of the affidavit was merely to show that no other person had a preferred right of purchase; and we have seen that actual residence is not necessary to such preferred right.

No other question has been discussed by counsel. It results that the learned judge erred in granting a new trial.

We therefore advise that the order appealed from be reversed.

BELCHER, C. C., and VANCLIEF, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the order appealed from is reversed.