[No. 11415.  Department Two.—December 15, 1888.]

# WILLIAM TAYLOR, APPELLANT, v. ROBERT WESTON ET AL., RESPONDENTS.

PUBLIC LAND — APPLICATION TO PURCHASE — ACTUAL SETTLER — LAND SUITABLE FOR CULTIVATION. — Under section 3500 of the Political Code as it stood between 1880 and 1885, the applicant for lieu land was required to be an actual settler upon the land, whether it was suitable for cultivation or not. This provision was not unconstitutional. If the affidavit be false in this regard, his proceedings are void.

ASSIGNMENT OF CERTIFICATE OF PURCHASE — BONA FIDE PURCHASER. — The assignee of the holder of a certificate of purchase is not protected by the rule as to *bona fide* purchasers, because he is not the purchaser of the legal title, but acquires an equity merely.

CERTIFICATE OF PURCHASE NOT A BAR TO INQUIRY. — In an action upon a reference from the land-office to determine the right to purchase, the certificate of purchase is not of itself a bar to inquiry as to the rights of the person to whom the certificate was issued.

APPEAL from a judgment of the Superior Court of Mendocino County, and from an order refusing a new trial.

The facts are stated in the opinion.

*J. M. Mannon,* and *J. W. Harding,* for Appellant.

*J. A. Cooper,* for Respondents.

HAYNE, C.—Action upon a reference from the land-office to determine who is entitled to purchase certain lieu lands from the state.

The plaintiff, who was an actual settler upon the land, filed his application to purchase on December 24, 1884. This application "was in due form, and stated all the facts required by law, and was duly verified." The defendant Weston's application, which was regular in form, was filed on March 1, 1884,— nearly nine months previously. This application stated that Weston was an actual settler on the land. But the court found that he "never was a settler on said land, nor in the possession thereof." On March 12, 1884, a certificate of purchase was issued

to Weston; and on the 15th of the same month he assigned this certificate to the defendant Payne, who paid value for the same, and who had no knowledge of the falseness of Weston's affidavit. The court below gave judgment in favor of Payne, and the plaintiff appeals. We think that the judgment was wrong.

1. The fact that Weston was not a settler on the land rendered his proceedings invalid, whether the land was suitable for cultivation or not. It is true that the constitution provides that "lands belonging to this state, which are suitable for cultivation, shall be granted only to actual settlers." (Art. 17, sec. 3.) But this did not prevent the legislature from annexing a similar condition to lands not suitable for cultivation. It did not "prevent or in any way affect the sale of lands which were not suitable for cultivation." (*Dillon* v. *Saloude*, 68 Cal. 270.) The state, being the owner of the land, could dispose of it upon any terms she pleased, provided they were not inconsistent with her organic law or with the grant under which she held. And at the time Weston's application was filed, the condition imposed was that the applicant should be an actual settler. This condition resulted from section 3500 of the Political Code, as amended in 1880 (it was again amended in 1885), which provided that the affidavit should state that the applicant was an actual settler on the land. No distinction was made between lands which were suitable for cultivation and lands which were not so. The requirement applied to all lands within the scope of the section. And it meant that the statement must be true. (*McKenzie* v. *Brandon*, 71 Cal. 211; *Plummer* v. *Woodruff*, 72 Cal. 31; *Harbin* v. *Burghart*, 76 Cal. 119.) Weston's affidavit as to his having been an actual settler having been false, his proceedings were invalid.

2. Payne, being the assignee of Weston, was in no better position. The court below held that Payne was protected by the rule as to innocent purchasers for value,

—in other words, that a certificate of purchase is nego-
tiable, like a promissory note.   And there is a statement
to that effect in the opinion of Deady, J., in *Smith* v.
*Ewing*, 11 Saw. 56.   But the point was not necessary to
the decision, which was, that the officers of the land
department had no power to cancel a certificate of pur-
chase, but that resort must be had to the courts.   With
deference to the views of that learned judge, we do not
think that the rule as to *bona fide* purchasers applies.

This conclusion might perhaps be rested upon grounds
of public policy.   The case is not like that of a private
owner, who sells his land for considerations of gain
alone.   The state does not throw the land upon the mar-
ket for sale to the highest bidder.   One price is fixed for
all purchasers.   And this is put much below the actual
value, because other considerations enter into the trans-
action.   Among these was the requirement that the
purchaser should be an actual settler upon the land.   It
was not thought best that the lands should be disposed
of to persons who might simply desire to hold them for
an increase in value.   The plan was, to dispose of them
to persons who would reside upon them and improve
them, and so increase the wealth of the community and
add to the number of good citizens.   That was the policy
of the state.   Now, it is manifest that this policy would
be defeated, if persons who falsely pretend to be of the
class entitled to purchase could, after deceiving the land
department into giving them their preliminary papers,
shut off investigation by immediately assigning such
preliminary papers to some third party.   The proceed-
ings before the land-officer being *ex parte* in the first
instance, and he being unable, from the nature of the
case, to personally investigate the truth of the statements
made to him, the opportunities for fraud are great, and
the temptation being strong, the result would probably
be that the legislative will would be almost entirely frus-
trated.   Hence we say that our conclusion, that the rule

as to *bona fide* purchasers does not apply, might perhaps be rested upon grounds of public policy.

But it is not necessary to put it upon that ground. Upon the most favorable view for the respondent, his position can be no better than if he had acquired a contract of purchase made by a private party. And in such case the rule as to *bona fide* purchasers would not apply, because his purchase would not be of the legal title, but of an equitable interest. The general rule, subject to some exceptions and qualifications, is, that the purchaser of an equitable interest is not protected as a *bona fide* purchaser. The authorities cited below are conclusive to this effect. In *Vattier* v. *Hinde*, 7 Pet. *271, the deed under which the party claimed was from one who had no title àt all. The decision, therefore, is not in point. But in delivering the opinion, Marshall, C. J., said: "The rules respecting a purchaser without notice are framed for the protection of him who purchases a legal estate and pays the purchase-money without knowledge of an outstanding equity. They do not protect a person who acquires no semblance of title. They apply fully only to the purchaser of the legal estate. Even the purchaser of an equity is bound to take notice of any prior equity." This language was adopted by Story in his treatise on equity jurisprudence. (See sec. 1502, pp. 825, 826, of vol. 2, 13th ed.) And in another place that learned and cautious writer, speaking of the rule as to *bona fide* purchasers, says: "The purchaser, however, in all cases, must hold a legal title, or be entitled to call for it, in order to give him the full protection for this defense; for if his title be merely equitable, then he must yield to a legal and equitable title in the adverse party." (1 Story's Eq. Jur., sec. 64 c, p. 64.)

The recording laws doubtless somewhat enlarge the rule as stated above. Under their operation the purchaser of an apparent legal title may, in some cases, be protected by the rule as to *bona fide* purchasers, although

his grantor had no title at all; and the purchaser of a mortgage (which under our system is merely a lien) is within its operation. (See *Frey* v. *Clifford*, 44 Cal. 335; Civ. Code, sec. 1214.) But the general rule as to the purchaser of a mere equity still obtains. And the assignee of an executory contract of purchase is the purchaser of a mere equity within the meaning of the rule. So far as the property is concerned, his right is merely to have specific performance of the contract, for which he must resort to a court of equity, which may refuse to lend its aid if not satisfied of the fairness of the transaction. In *Boone* v. *Chiles*, 10 Pet. *209, the rule as to *bona fide* purchasers was invoked on behalf of the holder of a contract of purchase. But the court, per Baldwin, J., said: "There is no one subject of equity cognizance in which there is a wider difference between a deed and a contract of purchase than the one under consideration. A purchaser with notice may protect himself under a purchaser by deed without notice; but cannot do it by purchase from one who holds or claims by contract only. The cases are wholly distinct." In the subsequent case of *Villa* v. *Rodriguez*, 12 Wall. 338, which went up from California, the rule as to *bona fide* purchasers was invoked in relation to a contract of purchase contained in a lease. But the court, per Swayne, J., said: "The doctrine invoked has no application where the rights of the vendee lie in an executory contract." So in *Polk* v. *Gallant*, 2 Dev. & B. Eq. 397, 34 Am. Dec. 410, where a son took a contract of purchase from his father, and paid the price without notice of any defect in the father's title, it was held that the rule as to *bona fide* purchasers did not protect him. And Ruffin, C. J., delivering the opinion, said: "Precisely on the same footing stands the purchase of the son from the father himself, which was of an equity only. It is only the honest purchaser of a legal title whom equity will not disturb. If the purchase be of the legal title, but with

notice of an equity in another, or, if it be only an assignment of an equity, with or without notice of a prior equity in another person, in either case the estate must, in the hands of the purchaser, answer all the claims to which it would have been subject in the hands of the vendor." So in *Chew* v. *Barnett*, 11 Serg. & R. 389, it was held that a purchaser claiming through a contract of purchase was not a *bona fide* purchaser within the meaning of the rule. And Gibson, J., delivering the opinion, said: "When we hear, therefore, of a purchaser for a valuable consideration taking the title free from every trust or equity of which he had not notice, it is intended that he is the purchaser of a title perfect on its face; for every purchaser of an imperfect title takes it with all its imperfections on its head. It is his own fault that he confides in a title which appears defective to his own eyes; and he does so at his peril. Now, every equitable title is incomplete on its face; it is, in truth, nothing more than a title to go into chancery to have the legal estate conveyed; and therefore every purchaser of a mere equity takes it subject to every clog that may lie on it, whether he had notice of it or not." So in *Dupont* v. *Wertheman*, 10 Cal. 369, it was held that the rule as to *bona fide* purchasers did not protect a party who took a contract which did not amount to a conveyance, but at most gave a mere equitable right. And Field, J., delivering the opinion, said: "The purchaser of an equitable title takes the property subject to all existing equities. He is not within the rule which protects a *bona fide* purchaser for value, and without notice, of the real or apparent legal title. He must take the imperfect title with all its imperfections." And this case was approved in *Reynolds* v. *Harris*, 14 Cal. 680, 76 Am. Dec. 459, in which it was said that the rule as to *bona fide* purchasers did not protect the assignee of a sheriff's certificate of purchase. (See also *Winborn* v. *Gorrell*, 3 Ired. Eq. 122; 40 Am. Dec. 456; *Williams* v.

*Love,* 2 Head, 86; 73 Am. Dec. 191; *Haskell* v. *State,* 31 Ark. 98; *Young* v. *Atkins,* 4 Heisk. 531; *White* v. *Nashville R. R. Co.,* 7 Heisk. 550.)

In the case before us the person through whom the respondent claims had only a contract of purchase. It is undisputed that the legal title is in the state, the very object of the proceeding being to determine who is entitled to a conveyance from the state. What is called a certificate of purchase (although treated as evidence of title as between third parties) is, as against the state, merely evidence of a contract to convey. And the respondent must establish his right against the state, each party in this kind of proceeding being an actor. (*Dillon* v. *Saloude,* 68 Cal. 269.) Hence the rule as to the purchase of equitable interests applies. And it has been applied by courts of authority to cases in relation to the acquisition of public lands. In *Root* v. *Shields,* 1 Woolw. 364, it was applied by Mr. Justice Miller to the assignee of a pre-emption claim. In *Craig* v. *Lieper,* 2 Yerg. 193, 24 Am. Dec. 479, it was applied in an able opinion by Catron, J., to the grantee of the rights acquired by an entry and land warrant under the early land laws. In *Stout* v. *Hyatt,* 13 Kan. 243, 244, it was applied to the assignee of a pre-emption claim for school lands under the territorial laws of Kansas. And in *Maghee* v. *Robinson,* 98 Ill. 466, it was applied to the assignee of a swamp-land certificate of purchase. (See also *Chrisinger's Case,* 4 Decisions of Department of Interior, 347.) We think, therefore, that the court below erred in holding the defendant Payne to be protected by the rule as to *bona fide* purchasers.

It is hardly necessary to add that in what we have said we have no reference to cases where the legal title has passed to the person through whom the *bona fide* purchaser claims.

3. In a proceeding like the present, the certificate of purchase is not of itself a bar to inquiry into the rights

of the person to whom it was issued. (*Gilson* v. *Robinson*, 68 Cal. 542; *Gould* v. *Lanterman*, 70 Cal. 247; *Jacobs* v. *Walker*, 76 Cal. 175.)

The defendant Payne therefore acquired no right to the land; and we think that the facts found show that plaintiff has the right to purchase it.

We therefore advise that the judgment be reversed and the cause remanded, with directions to enter judgment in favor of the plaintiff.

FOOTE, C., and BELCHER, C. C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment is reversed and cause remanded, with direction to enter judgment in favor of plaintiff.

Hearing in Bank denied.