[L.A. No. 30776. Aug. 25, 1978.]

CYNTHIA J. WELLENKAMP, Plaintiff and Appellant, v.
BANK OF AMERICA et al., Defendants and Respondents.

944

## COUNSEL

Fred Crane for Plaintiff and Appellant.

Jerome Zamos, Kipperman, Shawn, Keker & Brockett, Steven M. Kipperman, Friedman & Sloan, Stanley J. Friedman and Gary Garfinkle as Amici Curiae on behalf of Plaintiff and Appellant.

George W. Coombe, Jr., Harris B. Taylor, Alfred T. Twigg and John A. Judge for Defendants and Respondents.

McKenna & Fitting, Bernard Kolbor, Aaron M. Peck, Thomas A. Seaton, Hahn, Cazier, Hoegh & Leff, Arthur Fine and Andrew E. Katz as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

MANUEL, J.—(1) ██ ██ We address today the question whether enforcement of a due-on clause,[1] contained in a deed of trust securing real property, upon an outright sale of that property, constitutes an unreasonable restraint on alienation in violation of California law.

In July 1973, Birdie, Fred and Dorothy Mans (Mans) purchased a parcel of real property in Riverside County which they financed by a loan from defendant Bank of America in the amount of $19,100 (at 8 percent interest per annum) giving the bank their promissory note secured by a deed of trust. The deed of trust contained the standard due-on clause which provided that if the trustor (the Mans) "sells, conveys, alienates . . . said property or any part thereof, or any interest therein . . . or becomes divested of [his] title or any interest therein . . . in any manner or way, whether voluntarily or involuntarily, . . . Beneficiary shall have the right at its option, to declare said note . . . secured hereby . . . immediately due and payable without notice. . . ." The Mans' deed of trust named defendant Continental Auxiliary Company as trustee.

In July 1975, plaintiff Cynthia Wellenkamp purchased the property from the Mans. She paid the Mans the amount of their equity in the property, that is, the difference between the total selling price to plaintiff and the balance outstanding on the Mans' loan, and agreed with the Mans to assume the balance of their loan from defendant. A grant deed, transferring title to plaintiff was recorded on July 10, 1975. Defendant bank (hereinafter defendant) was given prompt notice of the transfer of title to plaintiff as well as her check for the July payment on the Mans' loan. Defendant thereupon returned this check to plaintiff with a letter notifying her of its right to accelerate upon transfer of the property by the Mans. The letter offered to waive defendant's right to accelerate in return for plaintiff's agreement to assume the Mans' loan at an increased rate of interest (from the original 8 percent to 9¼ percent per annum). A printed assumption agreement was enclosed with defendant's letter for plaintiff's signature.

Upon plaintiff's failure to accede to defendant's demand that the interest on the loan be raised to the then current rate, defendant filed a notice of default and election to sell under the deed of trust.

---

[1] A due-on clause is a device commonly used in real property security transactions to provide, at the option of the lender, for acceleration of the maturity of the loan upon the sale, alienation or further encumbering of the real property security.

Plaintiff then filed the present action in which she sought an injunction against enforcement of the due-on clause, and a declaration that exercise of such a clause, without any showing that defendant's security had been impaired as a result of the sale of the property to plaintiff, constituted an unreasonable restraint on alienation in violation of California law.

After the superior court granted plaintiff's motion for a preliminary injunction restraining defendant's foreclosure sale of the property, defendant demurred to plaintiff's complaint on the ground that it failed to state facts sufficient to constitute a cause of action for declaratory relief because automatic enforcement of a due-on clause after transfer of the property in an outright sale is valid under California law, and therefore, plaintiff could not prevail on the merits. After a hearing the superior court sustained the general demurrer, without leave to amend, and entered a judgment dismissing plaintiff's complaint.[2] This appeal followed.

A complaint for declaratory relief is legally sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the parties under a written instrument or with respect to property and requests that the rights and duties of the parties be adjudged by the court. (Code Civ. Proc., § 1060; *Maguire* v. *Hibernia Sav. and Loan Soc.* (1944) 23 Cal.2d 719 [146 P.2d 673, 151 A.L.R. 1062].) If these requirements are met and no basis for declining declaratory relief appears, the court should declare the rights of the parties whether or not the facts alleged establish that the plaintiff is entitled to favorable declaration. (*Bennett* v. *Hibernia Bank* (1956) 47 Cal.2d 540, 550 [305 P.2d 20]; *Columbia Pictures* v. *DeToth* (1945) 26 Cal.2d 753 [161 P.2d 217, 162 A.L.R. 747].)

The complaint herein alleges a controversy over the legal rights and duties of plaintiff and defendant under the deed of trust containing a due-on clause. Plaintiff contends that this clause is unenforceable absent a showing by the lender of impairment to its security; whereas defendant contends that it can automatically enforce the clause without any further showing. It is clear that the complaint shows the existence of an actual controversy sufficient to state a cause of action for declaratory relief. Therefore, the trial court committed error when it tested the sufficiency of

---

[2]In April 1976 the parties filed a stipulation for deferring foreclosure, whereby defendant agreed to refrain from taking further action to foreclose the deed of trust during the pendency of this appeal and plaintiff agreed to pay defendant the amount of the monthly payments on the Mans' loan.

the complaint by a determination of the merits and sustained the demurrer on the ground that no cause of action for declaratory relief had been stated. Defendant urges that, notwithstanding this procedural error by the trial court, judgment of dismissal should nonetheless be affirmed on appeal because plaintiff would not be entitled to a favorable declaration on remand. Defendant bases this proposal on its contention that automatic enforcement of the due-on clause after transfer of the subject real property in an outright sale does not constitute an unreasonable restraint on alienation. We do not agree.

■ We begin our discussion with a summary of the California law on restraints on alienation. Civil Code section 711 sets forth the basic law on the subject and states simply that "[c]onditions restraining alienation, when repugnant to the interest created, are void." Our decision in *Coast Bank* v. *Minderhout* (1964) 61 Cal.2d 311 [38 Cal.Rptr. 505, 392 P.2d 265], recognized that this rule was not absolute in its application, but forbade only *unreasonable* restraints against alienation. ■ In determining whether a due-on clause was unreasonable in *Coast Bank* we looked at whether the restraint was necessary to prevent impairment to the lender's security. We concluded that the restraint was reasonable in that case.

We next had occasion to determine whether a given restraint was unreasonable within the meaning of *Coast Bank* in *La Sala* v. *American Sav. and Loan Assn.* (1971) 5 Cal.3d 864 [97 Cal.Rptr. 849, 489 P.2d 1113]. The restraint involved in *La Sala* was a due-on clause which provided for acceleration of the maturity of the loan upon encumbrance of the subject property. In determining whether enforcement of this clause constituted an unreasonable restraint on alienation, we considered not only whether the restraint was necessary to prevent impairment to the lender's security, but also the effect that enforcement of the restraint would have on alienation. We concluded that enforcement of a due-on clause upon encumbrance of the subject property involved a significant restraint on alienation such as to preclude enforcement of the clause unless the lender could show that enforcement was reasonably necessary to protect its security.

Three years later, in *Tucker* v. *Lassen Sav. & Loan Assn.* (1974) 12 Cal.3d 629 [116 Cal.Rptr. 633, 526 P.2d 1169], we confronted the question whether automatic enforcement of a due-on clause upon the sale of the subject property by installment contract constituted an unreasonable restraint against alienation. ■ ■ Examining the principles developed in *LaSala* we recognized that a direct relationship exists between

the *justification* for enforcement of a particular restraint on the one hand, and the *quantum of restraint,* the actual practical effect upon alienation which would result from enforcement, on the other. Thus, the greater the quantum of restraint that results from enforcement of a given clause, the greater must be the justification for that enforcement. Applying this test in *Tucker* v. *Lassen Sav. & Loan Assn., supra,* 12 Cal.3d 629, we concluded that enforcement of a due-on clause upon sale of the property by installment contract involved a high quantum of restraint requiring a significant showing that enforcement was necessary to protect the lender's security.

We now proceed to apply the principles set forth in *La Sala* and *Tucker* to the case at bench which presents the issue, stated at the outset of this opinion, whether a due-on clause contained in a promissory note or deed of trust may be automatically enforced upon an outright sale of the property securing the loan.[3]

We first discuss the *quantum of restraint* imposed by enforcement of the due-on clause after transfer of the property by outright sale, for if, as defendant contends, automatic exercise of the clause in these circumstances results in little, if any, restraint on alienation, we need not reach the question whether there exists justification sufficient to warrant enforcement.

Although we suggested in dicta in both *Tucker* and *La Sala* that the restraint on alienation resulting from acceleration after an outright sale appeared to be de minimis, we indicated in those decisions that by the term "outright" sale, we were referring to transactions wherein the seller/trustor received full payment from the buyer, usually through new financing of the purchase (an "all cash to seller" sale). We reasoned that the restraint on alienation was slight in such cases because the seller received payment sufficient to discharge the balance of the loan secured by the deed of trust,[4] whereas in cases involving junior encumbrances or installment land contracts, the seller normally received only a fraction of the balance outstanding on the loan.

---

[3]We note that there are a number of decisions in other jurisdictions which reach differing results on the question whether a due-on clause can be automatically enforced upon the occurrence of an outright sale of the subject property. A lengthy discussion of these decisions is unnecessary, however, as we feel that our own decisions in *Tucker* and *La Sala* provide both an adequate and appropriate basis for determining what the law is in California on this question.

[4]Indeed, in substantially all cases wherein new financing is obtained the escrow instructions will contemplate direct payment of the existing loan balance to the lender.

We do not here so restrict the meaning of the term "outright sale," but instead, and in accordance with actual real estate parlance, we refer by that term to any sale by the trustor of property wherein legal title (and usually possession) is transferred.

Outright sales of real property commonly involve different types of financing arrangements depending upon the circumstances existing at the time of sale. Thus, when new financing is available and economically feasible, a buyer will be able to arrange to pay the seller the purchase price in full, in an "all cash to seller" arrangement. When, however, new financing is unavailable or is economically unfeasible, the buyer may arrange, as did plaintiff herein, to pay the seller only the amount of the seller's equity in the property, agreeing to assume or take "subject to" the existing deed of trust, in a "cash to loan" arrangement.[5]

The availability of new financing often depends upon general economic conditions. In times of inflation, when money is "tight" and funds available for real estate loans are in short supply, new financing may be difficult, if not impossible to obtain. The same result may occur when interest rates and the transactional costs of obtaining new financing are high, making it economically unfeasible for the buyer to acquire a new loan. When economic conditions are such that new financing is either unavailable or economically unfeasible, the seller and buyer will normally agree to a form of financing arrangement wherein the buyer will assume the seller's loan. In such circumstances, if the lender is unwilling to permit assumption of the existing loan, and instead elects to enforce the due-on clause, transfer of the property may be prohibited entirely, because the buyer will be unable to substitute a new loan for the loan being called due, and the seller will not receive an amount from the buyer sufficient to discharge that loan, particularly when the balance due is substantial. (See 1 Miller & Starr, Current Law of Cal. Real Estate, pt. 1 (1975 ed.) § 3:65, pp. 435-436.) Even when the lender is willing to waive its option to accelerate in return for the assumption of the existing loan at an increased interest rate, an inhibitory effect on transfer may still result. The buyer, faced with the lender's demand for increased interest, may insist that the seller lower the purchase price. The seller would then be forced to choose between lowering the purchase price and absorbing the loss with the resulting reduction in his equity interest,[6] or refusing to

---

[5]Other financing arrangements that may be utilized in these circumstances include transactions wherein the seller takes back a second deed of trust or an "all-inclusive" deed of trust.

[6]A state policy that home equities are to be protected and conserved is set forth in Health and Safety Code section 50007 (formerly § 41007).

go through with the sale at all. In either event, the result in terms of a restraint on alienation is clear.[7] (See Note, *Judicial Treatment of the Due-On-Sale Clause: The Case for Adopting Standards of Reasonableness and Unconscionability* (1975) 27 Stan.L.Rev. 1109, 1113.)

It is against this effect on alienation that we must measure the factors advanced in justification. In *Tucker* we held that a restraint on alienation could be justified only when a legitimate interest of the lender was threatened. We indicated that such interests, which pertain to protection against impairment to the lender's security, included preservation of the security from waste or depreciation and protection against the "moral risks" of having to resort to the security upon default by an uncreditworthy buyer. (See Hetland, *Real Property and Real Property Security: The Well-Being of the Law* (1965) 53 Cal.L.Rev. 151, 170; see also Cal. Real Estate Secured Transactions (Cont.Ed.Bar 1970) § 4.56, p. 184.)

Defendant contends that the risk of waste and default is significant in an outright sale because both possession and legal title to the property are transferred, thereby eliminating any incentive or ability that the seller/trustor would have to avoid realization of these risks by action of the buyer. Although we have previously distinguished on this basis both the junior encumbrance, where neither possession nor legal title was transferred (*La Sala*), and the installment land contract, where possession but not legal title was transferred (*Tucker*), we are now convinced that, although the original borrower/seller no longer retains an interest in the property after transfer of legal title in an outright sale involving no secondary financing by the seller (see fn. 5, *ante*),[8] this fact does not

---

[7]The argument of the dissent—that our holding places the seller of encumbered real property at a "competitive advantage" over the seller of unencumbered real property in periods of rising interest and tight money—simply misses the point. The fact that market conditions may operate to hamper the sale of some real property during such periods certainly cannot be held to justify the hampering of all such sales regardless of whatever financing arrangements may be outstanding against such property. Sellers of unencumbered real property have presumably benefited from lower interest rates in achieving their position. To require sellers of encumbered real property, who have not enjoyed this benefit, to suffer from market contingencies along with those who have, is to take a very narrow view of "competitive advantage." In any event we here concern ourselves with the effect of due-on provisions in the sale of properties subject to existing financing—not with the effect of market conditions upon properties not subject to existing financing. To the extent that such clauses hamper alienation of properties in the former category, a restraint upon alienation occurs.

[8]When the seller does not receive the value of his equity in cash but takes back a second or "all-inclusive" deed of trust for a portion thereof, he of course retains an equity interest in the property which provides him with an incentive to prevent waste or default. In this case, then, both the buyer and the seller have an interest in preserving the security. The lender's position thus resembles that occupied by it in the context of an installment

necessarily increase the risk to the lender that waste or default will occur. Thus the buyer in an outright sale, in order to pay off the seller's equity, may make a large down payment on the property, thereby creating an equity interest in the property *in him* which is sufficient to provide an adequate incentive not to commit waste or permit the property to depreciate. Moreover, the buyer in such an outright sale may be at least as good, if not a better credit risk than the original borrower/seller. We therefore conclude that although circumstances may arise in which the interests of the lender may justify the enforcement of a due-on clause in the event of an outright sale, the mere fact of sale is not in itself sufficient to warrant enforcement of the clause, and the restraint on alienation resulting therefrom, in the absence of a showing by the lender that such circumstances exist.[9]

We furthermore reject defendant's contention that the lender's interest in maintaining its loan portfolio at current interest rates justifies the restraint imposed by exercise of a due-on clause upon transfer of title in an outright sale. Although we recognize that lenders face increasing costs of doing business and must pay increasing amounts to depositors for the use of their funds in making long-term real estate loans as a result of inflation and a competitive money market, we believe that exercise of the due-on clause to protect against this kind of business risk would not further the purpose for which the due-on clause was legitimately designed, namely to protect against impairment to the lender's security that is shown to result from a transfer of title.[10] Economic risks such as those caused by an inflationary economy are among the general risks inherent in every lending transaction. They are neither unforeseeable nor unforeseen. Lenders who provide funds for long-term real estate loans should and do, as a matter of business necessity, take into account their projections of future economic conditions when they initially determine the rate of payment and the interest on these long-term loans. (See Note, *Judicial Treatment of the Due-On-Sale Clause: The Case for Adopting*

---

land sale contract. (See 1 Miller & Starr, Current Law of Cal. Real Estate, pt. 1, *supra,* § 3:65, pp. 439-440, fns. 15 and 16 and accompanying text.)

[9]In the instant case the party seeking enforcement of the due-on clause is an institutional lender. We limit our holding accordingly. We express no present opinion on the question whether a private lender, including the vendor who takes back secondary financing, has interests which might inherently justify automatic enforcement of a due-on clause in his favor upon resale.

[10]Automatic enforcement of the due-on clause is not the only method by which lenders can adjust the yield from their loan portfolios to meet increases in the cost of funds for these loans. With the enactment of Civil Code section 1916.5, the variable interest rate mortgage has become an attractive and viable alternative.

*Standards of Reasonableness and Unconscionability, supra,* 27 Stan.L.Rev. at p. 1117.) Unfortunately, these projections occasionally prove to be inaccurate. We believe, however, that it would be unjust to place the burden of the lender's mistaken economic projections on property owners exercising their right to freely alienate their property through the automatic enforcement of a due-on clause by the lender.[11] As we stated in *La Sala,* ". . . a restraint on alienation cannot be found reasonable merely because it is commercially beneficial to the restrainor. Otherwise one could justify any restraint on alienation upon the ground that the lender could exact a valuable consideration in return for its waiver, and that sensible lenders find such devices profitable." (5 Cal.3d at pp. 880-881, fn. 17.)

■ ■■■■ ■ ■■■■ ■ For the foregoing reasons, we hold that a due-on clause contained in a promissory note or deed of trust[12] cannot be enforced upon the occurence of an outright sale unless the lender can demonstrate that enforcement is reasonably necessary to protect against impairment to its security or the risk of default.[13] We therefore disapprove *Hellbaum* v. *Lytton Sav. & Loan Assn., supra,* 274 Cal.App.2d 456 and *Cherry* v. *Home Sav. & Loan Assn., supra,* 276 Cal.App.2d 574, and overrule to the extent inconsistent with this opinion the case of *Coast Bank* v. *Minderhout, supra,* 61 Cal.2d 311.

■ ■ It is urged that our decision should be given a purely prospective effect, given the reliance on existing laws by lenders when they entered into long-term real estate loan contracts. "It is the general

---

[11]We note that lenders have utilized the exercise of a due-on clause for other purposes in addition to maintaining their loan portfolios at current rates of interest. The clause has also been used as a lever to exact substantial consideration from the buyer in the form of assumption and waiver fees. (See *Cherry* v. *Home Sav. & Loan Assn.* (1969) 276 Cal.App.2d 574 [81 Cal.Rptr. 135]; *Hellbaum* v. *Lytton Sav. & Loan Assn.* (1969) 274 Cal.App.2d 456 [79 Cal.Rptr. 9].)

[12]Defendant argues that even if the due-on clause contained in the deed of trust were held not to be automatically enforceable because it constitutes an unreasonable restraint on alienation, inclusion of the due-on clause in the promissory note, as required by Civil Code section 2924.5 for property containing four or fewer residential units, would make that clause part of the debt itself and therefore automatically enforceable on that basis. It is clear that the purpose of Civil Code section 2924.5 is to provide notice to the borrower; it cannot be reasonably interpreted in the manner that defendant suggests.

[13]We reject defendant's contention that Civil Code section 2924.6, which prohibits acceleration after the events listed therein, sanctions acceleration in other situations not specifically mentioned in that legislation. The Legislature, in enacting section 2924.6, expressly disclaimed any such intent: "This act is not intended to affect the application of any other provision or principle of law to any type of acceleration provision other than those specifically described in this act." (Stats. 1975, ch. 850, § 2.)

rule that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation . . . ." (*County of Los Angeles* v. *Faus* (1957) 48 Cal.2d 672, 680-681 [312 P.2d 680].) We see no reason to depart from this rule in this case merely because of the lenders' expectations that they would derive economic benefits from enforcement of the due-on clause. (See *Texas Co.* v. *County of Los Angeles* (1959) 52 Cal.2d 55 [338 P.2d 440].) However, given the importance of the stability of real estate titles and the interest in preserving completed real estate financing arrangements, we hold that this decision shall not apply when the lender, prior to the date that this decision becomes final, has either enforced the due-on clause, resulting in sale of the subject property by foreclosure or in discharge of the accelerated debt, or when the lender has waived enforcement of the due-on clause in return for an agreement with the new buyer modifying the existing financing.

The judgment is reversed.

Bird, C. J., Tobriner, J., Mosk, J., Richardson, J., and Newman, J., concurred.


**CLARK, J.,** Dissenting.—Holding that exercise of a "due-on clause" upon outright sale of real property unreasonably restrains that sale, the majority opinion either misreads or rejects the very decisions on which it relies, particularly *Tucker* v. *Lassen Sav. & Loan Assn.* (1974) 12 Cal.3d 629 [116 Cal.Rptr. 633, 526 P.2d 1169]. Additionally, the majority opinion awards the owner of encumbered real property a bonus in that he can now sell his property for something in excess of what he could sell it for if unencumbered.

We have thus come full circle. In attempting to take away contractual rights of lenders in order to assist borrowers in selling encumbered properties, the majority opinion has devised a scheme which affords yesterday's borrower a clear advantage over today's seller who comes to the marketplace with his property free from encumbrance. But our beneficence may be shortsighted. For in attempting to assist the Wellenkamps, the majority opinion must necessarily restrict if not dry up mortgage funds otherwise available to the next generation of borrowers.

I briefly review the route by which we arrive at the threshold of today's decision. In *Coast Bank* v. *Minderhout* (1964) 61 Cal.2d 311 [38 Cal.Rptr. 505, 392 P.2d 265], our unanimous court agreed that reasonable restraints

on alienation of real property were lawful, and held that it was reasonable for a lender to condition its continued extension of credit to borrowers "on their retaining their interest in the property that stood as security for the debt." (*Id.,* at p. 317.)

In *La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864 [97 Cal.Rptr. 849, 489 P.2d 1113], we dealt with a due-on-encumbrance clause and distinguished *Coast Bank.* We first noted that enforcement of a due-on-sale clause as in *Coast Bank* was justified because of lender concern for a borrower's continued interest in maintaining the property, but concluded that because the creation of a junior encumbrance in the property did not terminate the borrower's continuing interest, enforcement of the due-on clause was not necessary to protect the lender. We held that enforcement of a due-on-encumbrance clause could thus be an unreasonable restraint on alienation. (*Id.,* at p. 880.) However, a near unanimous court noted that if particular circumstances indicated the lender's security was endangered "the enforcement of the due-on-encumbrance clause may be reasonably necessary . . ." (*id.,* at p. 881), relying on *Coast Bank* (*id.,* at p. 882).

Finally, in *Tucker* v. *Lassen Sav. & Loan Assn., supra,* 12 Cal.3d 629, we dealt with a due-on clause in the context of a proposed installment sale contract. We reviewed the existing law, refined the rules announced in *Coast Bank* and *La Sala* and proclaimed that the reasonableness of a restraint on alienation is to be measured by balancing the quantum of resulting restraint when a borrower is forced to comply with a due-on clause, against the justification for the restraint, that is, the measure of the hazard to the lender's security should the property be alienated as proposed. We unanimously concluded that the restraint was not reasonably justified when weighed against the quantum of restraint imposed on the borrower in an installment sale context. But as in *La Sala* we reaffirmed *Coast Bank* by demonstrating decreased justification for—and increased quantum of restraint in—an installment sale when compared with an outright sale. (*Id.,* at p. 638.)

The majority opinion now proposes to abandon what *Coast Bank, La Sala* and *Tucker* have taught us. Having recognized the due-on clause in junior encumbrances and installment sales to constitute unreasonable restraints *only* because they were deemed to require striking a *different* balance from that in an outright sale, the majority opinion leaps to the conclusion that a due-on clause in an outright sale is unenforceable, thus obliterating our prior distinction.

While the majority opinion purports to weigh justification for restraint against quantum, it errs by failing to accurately weigh relevant factors. It first recognizes that if "automatic exercise of the clause in these circumstances results in little, if any, restraints on alienation, we need not reach the question whether there exists justification sufficient to warrant enforcement." (*Ante,* p. 949.) It then purports to weigh the restraint which may result to the seller. In doing so, it must guess the marketplace. It imagines a market condition whereby money is "tight" or unavailable, and lenders are reluctant to loan except at interest rates higher than that at which the seller is obligated on an older existing loan. Exercise of a due-on clause in such circumstances, the opinion argues, restrains the seller because he cannot sell except by taking cash or a note for his "equity." If the lender is unwilling to permit assumption of its loan at the original interest rate, the seller is unreasonably restrained from selling his house. So it is argued.

What the majority opinion fails to recognize is that the "restraint" in its hypothetical case results not from exercise of the contractual clause but rather from the bleak and unpredictable economic conditions it paints. Of course, whenever money is tight and interest rates are high, a brake on those sales requiring financing naturally results.[1] A seller possessing property and a buyer lacking sufficient funds can seldom do business if financing is unavailable. It may be they cannot do business at all because of the seasonal unavailability of funds to the prospective buyer.[2] If they can do business other than by a contract of sale it follows that the buyer must pay the going interest rate and the seller, as an incentive to the buyer, may be required to reduce the selling price. If a loan exists on the property with a due-on clause, no *increased* restraint on selling results if the lender cannot accept the proposed buyer, the situation then being the same as in the case of the unavailability of funds to the proposed buyer. If the lender will permit assumption but only at an increased interest rate, again no *increased* restraint results because without the existing loan the buyer would be required to pay the higher interest rate and the seller may be required to compromise his selling price. There is thus no increased restraint on alienation beyond that inherent in the economic conditions

---

[1] If the sale does not require outside financing, there is no problem as there is money available to retire the outstanding loan. The majority opinion also recognizes there is no problem when a tight money market does not exist: "Thus, when new financing is available and economically feasible, a buyer will be able to arrange to pay the seller the purchase price in full, . . ." (*Ante,* p. 950.)

[2] They could, of course, do business by a contract of sale. (*Tucker* v. *Lassen Sav. & Loan Assn.* (1974) 12 Cal.3d 629 [116 Cal.Rptr. 633, 526 P.2d 1169].)

postulated by the majority. But is it the province of this court to predict the unpredictable?

The net result of the majority opinion is best illustrated by analyzing the real effect on all parties upon denying the lender its contractual right to exercise a due-on clause. As we have noted, in a tight money market, the seller of unencumbered real property is already seriously handicapped. However, if his neighbor's home possesses an existing loan with a now unenforceable due-on clause, that seller is granted an immediate competitive advantage. In spite of his original agreement, he can now "sell" the loan without regard to the lender's wishes. His buyer has automatic financing where none is otherwise available. The interest he will be required to pay is less than market. Because that seller has a marketable, sought-after asset in the form of a low-interest transferable loan—something he never bargained for—he can ask for and expect to get additional considerations from his buyer. And the buyer may also look forward to the same advantage on resale. The loan has thus become not a restraint on alienation but a factor making salable what before could not be sold.[3]

The majority opinion, after declaring the due-on clause imposes a serious restraint in the circumstances it postulates, proceeds to negate justification. It declares that factors this court has unanimously deemed to justify exercise of the clause in the past are of little consequence now. It acknowledges that we have—up to now—held that a lender could exercise a due-on clause on an outright sale to protect interests "which pertain to protection against impairment to the lender's security, included preservation of the security from waste or depreciation and protection against the 'moral risk' of having to resort to the security upon default by an uncreditworthy buyer. (See Hetland, *Real Property and Real Property Security: The Well-Being of the Law* (1965) 53 Cal.L.Rev. 151, 170; see also Cal. Real Estate Secured Transactions (Cont.Ed. Bar 1970) § 4.56, p. 184.)" (*Ante,* p. 951.) However, the opinion dismisses such recognized usage with the gratuitous comment that "we are now convinced that,

---

[3]The majority cling to the thesis that its decision today serves to eliminate restraints on alienation. However, in footnote 7 (*ante,* p. 951) it concedes its concern *only* for properties with existing financing to the disadvantage of unencumbered properties, when such properties are competing on the same market. In an attempt to justify its lack of equal concerns, it argues that sellers of unencumbered real property "have presumably benefitted from lower interest rates in achieving their position," and now such advantage should be balanced in favor of those who have not benefited, they being the sellers of encumbered real property. The presumption by the majority is completely gratuitous —nothing in the record nor in sound reason supports it. The declared policy is manifestly one which would be better left to our Legislature.

although the original borrower/seller no longer retains an interest in the property after transfer of legal title in an outright sale . . . this fact does not necessarily increase the risk to the lender that waste or default will occur." (*Ante,* pp. 951-952.) The majority refers to no authority in support of its conclusion that the mere fact of an outright sale "is not in itself sufficient to warrant enforcement" of a due-on clause "in the absence of a showing by the lender that such circumstances exist." (*Ante,* p. 952.)

The lack of citation to authority in support of the majority's conclusion is understandable in view of its purported but inaccurate application of principles enunciated in *Tucker* v. *Lassen Sav. & Loan Assn., supra,* 12 Cal.3d 629. In justification for holding a due-on clause unenforceable on sale of property by installment contract, the unanimous *Tucker* court stated: "Thus in the normal case the vendor, having received a small down payment and retaining legal title, has a considerable interest in maintaining the property until the total proceeds under the contract are received; *in this he differs markedly from the vendor of property where there has been an outright sale.*" (*Tucker* v. *Lassen Sav. & Loan Assn., supra,* 12 Cal.3d 629, 638; italics added.)

The majority opinion errs first in concluding that a due-on clause unreasonably restricts outright sale of property; errs again in concluding there is little or no justification for the clause, contrary to our earlier holdings. We err again in failing to recognize that lenders and borrowers, owners and prospective owners, should be allowed to run their own affairs with minimal governmental intrusion—particularly from this branch.

Appellant's petition for a rehearing was denied September 20, 1978. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.