BOOCHEVER, Circuit Judge:
This appeal is from a summary judgment extinguishing any claims that may be asserted by K.D. Realty Fund No. 1 (“K.D.”) or David and Nettie M. Sham-beau (“the Shambeaus”) to certain real property known as the Mediterranean Apartments, located in Los Angeles County. The district court granted the summary judgment based on its conclusion that California law does not give a purchaser under a land sale contract bona fide purchaser status until he or she pays the full purchase price and obtains legal title. On appeal, we review a trial court’s conclusions of state law under the same de novo standard we use to review a trial court’s conclusions of federal law. In re McLinn, 739 F.2d 1395 (9th Cir.1984) (en banc). In conducting that independent review, we find we cannot agree with the district court’s interpretation of California law and therefore reverse the summary judgment.
GENERAL BACKGROUND
Wallace Perry, as trustee in bankruptcy of the estates of Boyd and Joan O’Donnell, brought this action to quiet title in himself in the Mediterranean Apartments. His purported interest in the property arises from a 1972 Arizona Bankruptcy Court’s denial of a voluntary discharge in bankruptcy for Boyd and Joan O’Donnell, who he claims made fraudulent transfers of the property.
The property, however, has since changed hands a number of times. Presently, both K.D. and the Shambeaus claim an interest in it. K.D. entered into an installment land contract, recorded on July 21, 1978, for purchase of the apartments from Temora Trading Company, Ltd. The Shambeaus and their partner, Raymond Uptmor, in turn executed an installment land contract, recorded October 8, 1980, for purchase of the property from K.D.
At the time the trustee initiated this action, the Shambeaus and Uptmor, pursuant to their contract, were making installment payments of $5,565.00 a month to K.D., their vendor. Of this amount, K.D. paid $1,399.90 to Brentwood Savings and Loan Association, the holder of the first deed of trust on the apartments, and $2,806.55 to Temora, K.D.’s vendor under a similar land sale contract, or to Pablo Investment Ltd., Temora’s assignee.
The trustee moved for' summary judgment against K.D. and the Shambeaus on three grounds. First, he argued that one of the instruments in the chain of title, a deed from James Gleason to Temora Trading Company, was a forgery because Gleason never existed. He concluded that any subsequent purchaser could not claim title to the property. Second, he argued that, as a matter of law, K.D. and the Sham-beaus cannot be bona fide purchasers be *1349 cause their purchase under land sale contracts gave them only equitable rather than full legal title to the property. Third, he argued that at the time each of the defendants entered into their contracts to purchase the Mediterranean Apartments, each had notice of the trustee’s prior claim to the property.
The district court found that there were unresolved issues of material fact regarding the existence of Gleason and notice of a prior claim. Nevertheless, the court granted summary judgment in favor of the trustee on the ground that pursuant to California law a purchaser under a land sale contract cannot be a bona fide purchaser until he or she pays the full purchase price and obtains legal title to the property. K.D. and the Shambeaus appealed, and the trustee cross-appealed the district court’s refusal to grant summary judgment on the basis of his evidence that James Gleason never existed. As stated above, we disagree with the district court’s interpretation of California law. We agree, however, that genuine issues of material fact are unresolved regarding the existence of Gleason and notice of a prior claim. We, therefore, affirm in part, reverse in part, and remand the case to the district court for factual determinations.
DISCUSSION
1. Land Sale Contracts
There is no question that both K.D. and the Shambeaus made monthly payments pursuant to their land sale contracts for the Mediterranean Apartments and in no way breached their contracts. The only question is whether, as a matter of law, an uncompleted land sale contract precludes the purchaser from enjoying the status of a bona fide purchaser for value. The trustee contends that it does, because the purchaser merely holds an equitable interest, leaving legal title in the vendor. He relies principally upon an old California case, Taylor v. Weston, 77 Cal. 534, 20 P. 62 (1888), and a federal district court case, United States v. Certain Parcels of Land, 85 F.Supp. 986 (S.D.Cal.1949).
Both cases support the trustee’s argument. In Taylor, the California Supreme Court held that a certificate of purchase is a mere equitable interest and, as such, is not entitled to the protection of the rule regarding bona fide purchasers for value. Taylor, 20 P. at 65. The federal district court, relying upon Taylor, held that under California law, the assignee of a certificate of purchase has only an equitable interest and, therefore, is not entitled to the protection of a bona fide purchaser. Certain Parcels of Land, 85 F.Supp. at 1010. Although both Taylor and Certain Parcels of Land involved the special situation of a certificate of purchase, there can be no doubt that the Taylor court specifically recognized that a contract of sale is not entitled to the protection of the bona fide purchaser rule. Taylor, 20 P. at 64-65. Moreover, the United States Supreme Court in a pre-Taylor case held that under California law the rule regarding bona fide purchasers for value “has no application where the rights of the vendee lie in an executory contract.” Villa v. Rodriguez, 79 U.S. (12 Wall.) 323, 338, 20 L.Ed. 406 (1870).
Although California law in 1888 clearly required a purchaser to have full legal title before enjoying the status of bona fide purchaser for value, more recent California cases have shown a gradual erosion of the rigid distinction between legal and equitable title. See generally, 3 B. Witkin, Summary of California Law, “Security Transactions in Real Property,” § 21, p. 1510 (9th ed. 1973); 1 Ogden, Revised California Real Property Law, § 10.7 (1974). Moreover, the only recent California case that directly addresses the issue of contracts of sale recognized that a purchaser holding equitable title to the property comes within the bona fide purchaser rule. Utley v. Smith, 134 Cal.App.2d 448, 285 P.2d 986 (1955).
In Utley, an owner of property executed an option contract with one party and later entered into an agreement for sale of the same property with a third party. The optionee recorded his option agreement af *1350 ter the second purchaser entered into the contract of sale. Although the court recognized that the second purchaser was a mere equitable owner, and that the seller retained the legal title to the property pending completion of the contract, id. 285 P.2d at 987, it held that because the second purchaser had no notice of the prior option contract he was “entitled, upon performance of [the] agreement, to receive the legal title....” Id. at 988.
We are mindful that Utley involved two equitable interests (an option contract and a contract of sale) rather than a prior legal interest and subsequent equitable interest. Utley did not decide whether an equitable owner may enjoy bona fide purchaser status as against a prior legal interest of which he has no notice. That factual distinction, however, does not detract from the importance of Utley to show a court of appeal’s movement away from the rigid preclusion of equitable owners from bona fide purchaser status. In addition, we note that after Utley another California Court of Appeal indicated that the distinction between legal and equitable ownership alone is not determinative of a quiet title action. See Chalmers v. Raras, 200 Cal.App.2d 682, 19 Cal.Rptr. 531 (1962) (holding that one who acquires legal title with notice of a prior equitable interest in the property is not a bona fide purchaser).
Utley provides direct authority for the defendants’ argument that the equitable nature of their interest does not automatically preclude them from bona fide purchaser status. We realize of course that Utley was decided by a court of appeal with no citation to Taylor, a California Supreme Court case, Certain Parcels of Land, a federal district court case interpreting California law, or Villa v. Rodriguez, a United States Supreme Court case applying California law. If these were the only cases interpreting the nature of California land sale contracts, we might find the older California Supreme Court case controlling instead of the later court of appeal decision. These cases, however, do not stand alone. Without explicitly overruling Taylor, the California Supreme Court clearly has retreated from its rigid earlier view of contracts of sale.
In MacFadden v. Walker, 5 Cal.3d 809, 816, 97 Cal.Rptr. 537, 541, 488 P.2d 1353, 1357 (1971), for example, the California Supreme Court allowed a defaulting contract purchaser to avoid forfeiture and obtain specific performance by curing the default, notwithstanding that up to that point this remedy has been reserved exclusively for holders of legal title under forfeiture proceedings. The court noted:
Professor Hetland’s persuasive arguments that installment land sale contracts should be treated as security devices substantially on par with mortgages and deeds of trust, and that therefore “the law governing those security devices should be adopted with appropriate modifications in determining the remedies for breaches of installment contracts.” (Honey v. Henry’s Franchise Leasing Corp. ... 64 Cal.2d 801, 804, 52 Cal.Rptr. 18, 20, 415 P.2d 833, 835 [(1966)]; see Hetland, California Real Estate Secured Transactions, §§ 3.58-3.81, pp. 100-134 [ (1970) ].)
As a consequence, there may be little, if any, distinction in California law between the default remedies available under land sale contracts and mortgages or deeds of trust. See, Hetland, California Real Estate Secured Transactions, supra, § 3.75, pp. 122-124.
Moreover, the California Supreme Court, in the context of enforcement of “due-on-sale” clauses, has abandoned the distinction it once made between land sale contracts and outright sales. See Wellenkamp v. Bank of America, 21 Cal.3d 943, 148 Cal.Rptr. 379, 582 P.2d 970 (1978). Prior to Wellenkamp, the court had held that a due-on-sale clause was enforceable in the context of an outright sale, see Coast Bank v. Minderhout, 61 Cal.2d 311, 38 Cal.Rptr. 505, 392 P.2d 265 (1964), but unenforceable in the context of an installment contract, see Tucker v. Lassen Savings & Loan Ass’n, 12 Cal.3d 629, 116 Cal.Rptr. 633, 526 P.2d 1169 (1974). In Wellenkamp, the *1351 court overruled Coast Bank and held that due-on-sale clauses are unenforceable in either context as an unreasonable restraint against alienation except where the lender can show that enforcement is reasonably necessary to protect its security interest or to protect against a risk of default. 148 Cal.Rptr. at 384-85, 582 P.2d at 375-76. Although the Wellenkamp court was concerned only with the effect of enforcement of due-on-sale clauses in an outright sale as opposed to a land sale contract, the opinion recognized that the earlier rigid distinction between the two failed to take into account the practical realities of the various security devices.
Finally, in High Fidelity Enterprises, Inc. v. Hull, 210 Cal.App.2d 279, 26 Cal.Rptr. 654, 655 (1962), a California Court of Appeal recognized that contracts of sale, like mortgages and deeds of trusts, are governed by the recordation statute that determines priority between successive transfers.
Under the Erie doctrine,[1] federal courts “must follow the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently.” Stoner v. New York Life Insurance Co., 311 U.S. 464, 467, 61 S.Ct. 336, 337, 85 L.Ed. 284 (1940); see also American Triticale, Inc. v. Nytco Services, Inc., 664 F.2d 1136, 1143 (9th Cir.1981). We therefore follow the lead of Utley in holding that an equitable owner may be a bona fide purchaser for value. The McFadden and Wellenkamp decisions strongly suggest that, were it presented today with these facts, the California Supreme Court would decide the issue, as have we, along the lines of Utley. The only contrary evidence is a California Supreme Court case that was decided almost 100 years ago. We note that perpetuation of the Taylor rule would lead to a grossly unfair result. A person who has paid all but the last installment under a land sale contract under Taylor would lose the property, although the contract was entered into without notice of a prior interest. Yet under identical circumstances, a person who has paid only one installment under a mortgage or deed of trust would keep the property. We cannot believe that the California Supreme Court today would invoke that harsh rule, exalting the form of the security device over substance.
Based on the trend apparent in the California Supreme Court cases and the persuasive teaching of Utley, see Birnbaum v. United States, 588 F.2d 319, 325-26 (2d Cir.1978), we cannot agree with the district court’s interpretation of California law.
2. Notice
The trustee maintains that the defendants are not qualified for bona fide purchaser status in any event since they had constructive notice of his interest in the property because he recorded a prior Nevada court judgment quieting title in him in the apartments, injunctions against certain persons from conveying the property, and two lis pendens concerning the apartments. We cannot agree. Constructive notice arises as a matter of law by the recording statutes. By contrast, actual notice means that which a person actually knows or could discover by making a reasonable investigation. See United States v. Certain Parcels of Land, 85 F.Supp. at 1002 n. 13.
We do not question the trustee’s assertion that a prior recorded judgment, like a prior recorded deed, may put subsequent purchasers on notice of a prior interest. In the case at bar, however, the recorded state court judgment in the quiet title suit postdates the transfer of the property to both K.D. and the Shambeaus. K.D. purchased the apartments under a land sale contract from the Temora Trading Company in July 1978. Under a similar land sale contract, it sold its interest in the property to the Shambeaus and Uptmor[2] in October 1980. It was not until July 1981 *1352 that the Nevada court ordered Temora to execute a deed to the apartments to the trustee. At that time K.D. and the Sham-beaus already had obtained their interest in the property. They, therefore, could not have had constructive notice of the Nevada court judgment.
The defendants construe this part of the trustee’s constructive notice argument as a res judicata argument. We do not read it as such, but to the extent that the trustee intended to assert the Nevada quiet title judgment as a bar to these defendants’ litigating the issue of title to the Mediterranean Apartments, the argument lacks merit. It is well settled that although a court may have in personam jurisdiction to order one of the parties to convey to the other party a deed to property in another state, it cannot directly affect or determine title to that real property.[3] See Fall v. Eastin, 215 U.S. 1, 11, 30 S.Ct. 3, 7, 54 L.Ed. 65 (1909); In Re Marriage of Fink, 25 Cal.3d 877, 160 Cal.Rptr. 516, 519 n. 5, 603 P.2d 881, 884 n. 5 (1979); Rozan v. Rozan, 49 Cal.2d 322, 317 P.2d 11, 15 (1957); Taylor v. Taylor, 192 Cal. 71, 218 P. 756, 758-59 (1923).
The trustee also argues that injunctions issued by the district court for the Northern District of California and two lis pen-dens were recorded in Los Angeles and thus put defendants on constructive notice of his interest in the property. Again, we cannot agree.
At the time the district court for the Central District of California issued its injunctions (Sept. 28 and Oct. 14, 1971), Gleason had already transferred the trust deed to Temora (July 6, 1971). The fact that that transfer was not recorded until after recordation of the injunction is immaterial, because at the time K.D. purchased the property both instruments were recorded. The recordation of an instrument serves to notify subsequent purchasers of its contents. See Brown v. Copp, 105 Cal.App.2d 1, 232 P.2d 868, 871 (1951); Cal.Civ.Code § 1213. Hence, K.D. and the Sham-beaus had constructive knowledge that on July 6, 1971, Gleason transferred his interest in the property to Temora, K.D.’s vendor, and that on September 28 and October 14, 1971, some two to three months later, the federal district court enjoined Gleason from transferring the property.[4] Because the injunctions postdated the transfer to Temora, they lie outside the chain of title. See Stafford v. Ballinger, 199 Cal.App.2d 289, 18 Cal.Rptr. 568, 572 (1962).
The lis pendens noticing an action in the bankruptcy court in California with Temora as a defendant ordinarily would have given K.D. constructive knowledge of the pendency of that action, but the bankruptcy court dismissed the action one year before K.D. entered into the land sale contract with Temora. It, therefore, cannot constitute constructive notice of a prior interest in the property.
At the time the Shambeaus entered into the land sale contract with K.D., however, they did have constructive notice that a quiet title action was pending in a Nevada state court against Temora, K.D.’s vendor. The trustee would have us hold that notice of the pendency of that suit automatically defeats Shambeaus’ status as bona fide purchasers. Certainly, recordation of the pendency of a lawsuit involving the property put the Shambeaus on notice that any interest they acquired in the property would be subject to the outcome of that lawsuit and any defects in Temora’s title raised in that case. The outcome of the Nevada quiet title action, however, was an order against Temora to execute a deed *1353 to the Mediterranean Apartments to the trustee unless the apartments already had been sold. The court stated that if Temora had sold the property it must pay the proceeds from that sale to the trustee. Hence, the outcome of the litigation- of which the Shambeaus had notice did not affect their interest. The question, therefore, is whether the Shambeaus’ constructive notice of the pendency of a quiet title action against Temora gave the Shambeaus actual notice of a valid prior interest in the property. That question is one of fact. See Pettis v. General Telephone Co. of California, 66 Cal.2d 503, 58 Cal.Rptr. 316, 319, 426 P.2d 884, 887 (1967).
We agree with the district court that there is a genuine issue of material fact regarding actual notice. Accordingly, we remand to the court to determine whether the trustee has a valid prior interest in the property and whether either of the defendants knew of that interest or could have discovered it through reasonable inquiry.
3. Void Deed
The trustee argues that we can hold as a matter of law that K.D. and the Sham-beaus are not bona fide purchasers because a link in their chain of title is void. The trustee’s void deed theory is premised on the allegation that James Gleason is a fictitious person, and, therefore, the chain of title flowing from Gleason is void as a matter of law. We need not determine that issue of California law at this time because it has not yet been determined whether in fact Gleason exists.
Although the trustee presented evidence that calls into question Gleason’s existence, he also submitted a copy of an assignment of a deed of trust to Temora Trading Company with the signature of James Gleason acknowledged before the American Vice Consul in the Bahamas. We believe a deed acknowledged by such a disinterested official is enough to raise a genuine issue of material fact regarding the existence of James Gleason. Because resolution of that factual issue may obviate the need to decide whether under California law title can pass through a fictitious person, we remand to the district court to resolve the factual dispute.
4. Statute of Limitations
The defendants claim for the first time on appeal that a California statute of limitations bars the trustee’s action.
Although in a diversity action the federal court must apply the applicable state statute of limitations, the Federal Rules of Civil Procedure determine the manner and time in which the defense may be raised and when waiver occurs. Healy Tibbitts Construction Co. v. Insurance Co. of North America, 679 F.2d 803, 804 (9th Cir.1982) (per curiam). Because Fed.R.Civ.P. 8(c) requires a defendant to plead affirmatively the statute of limitations defense, we refuse to address the merits of defendants’ claim. Failure to raise the defense in the district court constitutes a waiver. See Colonial Refrigerated Transportation, Inc. v. Worsham, 705 F.2d 821, 826 (6th Cir.1983); United States v. Indiana Bonding & Surety Co., 625 F.2d 26, 29 (5th Cir.1980). Cf. Michael-Regan Co., Inc. v. Lindell, 527 F.2d 653, 660 (9th Cir.1975) (statute of frauds defense waived if not asserted in district court).
Our decision in Rivera v. Anaya, 726 F.2d 564 (9th Cir.1984), is not to the contrary. There, we merely recognized that failure to assert a statute of limitations defense in the initial pleading does not necessarily waive the defense. Because we found no prejudice to the other party, we agreed with the district court’s ruling that the defendant could raise the defense for the first time in a motion for summary judgment. Id. at 566. Here, the defendants never raised the issue in the district court, and we decline to address it on appeal. See Genson v. Ripley, 681 F.2d 1240, 1242 (9th Cir.1982) (per curiam), cert. denied, 459 U.S. 937, 103 S.Ct. 245, 74 L.Ed.2d 193 (1983). Similarly, we are not confronted with the question whether the answer could be amended on remand to raise the statute of limitations defense.
*1354 In sum, we believe the district court erred in holding that California law so sharply distinguishes between land sale contracts and other security devices that a purchaser under such a contract cannot be a bona fide purchaser for value until he or she has paid the full purchase price. We agree with the district court that the trustee’s two alternative bases for summary judgment raise genuine issues of material fact. Accordingly, we remand this case to the district court to make those factual determinations.
REVERSED in part, AFFIRMED in part, and REMANDED.

. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

. We note that the district court entered a default judgment against Uptmor but that judgment is not before us on this appeal.

. In fact, in recognition that its jurisdiction was over Temora personally and not over the property in California, the Nevada court ordered Temora to execute a deed to the Mediterranean Apartments to the trustee, but noted that if the property had already been sold, Temora must pay the trustee any proceeds it had received from the sale.

. We note that this court, in an unpublished memorandum disposition, found the injunction against Gleason to be void for lack of personal jurisdiction over him, [In re O’Donnell, No. 76-1837 (9th Cir. Jan. 26, 1979), as modified, Dec. 3, 1979]. K.D., however, could not have known of that holding when it purchased the property in 1978.